# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARRY G. JUNKER** | § | **CIVIL ACTION** |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MEDICAL COMPONENTS, INC. et al** | § | **NO. 2:13-CV-04606-LFR** |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
### ON INVALIDITY, INFRINGEMENT AND DAMAGES
### AND REQUEST FOR ORAL ARGUMENT

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................1

II.  FACTUAL BACKGROUND ...............................................................1

III. THE STANDARDS FOR SUMMARY JUDGMENT ..........................3

IV.  DEFENDANTS' INFRINGE THE PATENT IN SUIT .........................4

V.   DEFENDANTS CANNOT ESTABLISH BY CLEAR AND CONVINCING
     EVIDENCE THE PATENT IS INVALID ...........................................10

     A.  Affirmative Defenses Nos. Three, Four, Five, Six and Seven...................11

     B.  Fraud Claims and Failure to Identify Co-Inventors...................................13

     C.  The Patent is Not Invalid Under 35 USC § 103 for Obviousness .............18

     D.  The Patent is Not Invalid Under 102(b) On Sale ......................................19

VI.  THE DAMAGE AMOUNT UNDER 35 USC § 289 FOR PROFITS ARE
     UNDISPUTED ...................................................................................20

VII. THE COURT MAY IMPOSE A $250/UNIT STATUTORY DAMAGE
     UNDER 35 U.S.C. § 289..................................................................22

VIII. DEFENDANTS' DEFENSE UNDER 102(e) IS BARRED BY
     COLLATERAL ESTOPPEL ..............................................................23

IX.  CONCLUSION...................................................................................27

## <u>TABLE OF AUTHORITIES</u>

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.* 725 F. 2d 1350
(Fed.Cir. 1984)................................................................................................10,11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .........................................3, 12, 20

*Apple, Inc. v. Samsung Elecs. Co*., 678 F.3d 1314 (Fed.Cir. 2012)........................18, 19

*ATD Corp. v. Lydall, Inc.*, 159 F.3d 534 (Fed. Cir. 1998).................................................3

*Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012) ........................18

*Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532 (S.D. Ala. 2007).........................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...............................................11, 12

*Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476 (D. Minn. 1980)......................21

*Braun, Inc. v. Dynamics Corp.*, 975 F.2d 815 (Fed. Cir. 1992) ......................................4

*Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135 (Fed. Cir. 1986)...............10

*Caterpillar Inc. v. Sturman Indus., Inc.,* 387 F.3d 1358 (Fed. Cir. 2004) .....................17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................3, 20

*Checkpoint Sys. v. All-Tag Sec. S.A.* , 412 F.3d 1331 ...................................................17

*Churchill v. Star Enters.*, 183 F.3d 184 (3d Cir. 1999). ................................................23

*Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed.
2d 247 (1984)....................................................................................................4

*Contessa Food Prods.. v. Conagra*, 282 F.3d 1377, 1377 (Fed. Cir. 2002)...................9

*C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1352, 48 U.S.P.Q.2D (BNA)
1225, 1232 (Fed. Cir. 1998)..............................................................................15

*Crocs, Inc. v. ITC*, 598 F.3d 1294 (Fed. Cir. 2010)........................................................9

*Custom Accessories, Inc. Jeffrey-Allan, Indus. Inc.,* 807 F. 2d 955 (Fed.Cir. 1986) .....11

*Durling v.Spectrum Furniture Co.,* 101 F.3d 100, 103 (Fed.Cir. 1996)........................19

*Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665 (Fed. Cir. 2008) (*en banc*).....4, 8, 9

*Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955 (Fed. Cir. 2001)...............................4

*Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 U.S.P.Q.2D
(BNA) 1545 (Fed. Cir. 1998).......................................................................................15

*Exergen Corp. v.Wal-Mart Stores, CVS, and SAAT*, 575 F.3d 1312, (Fed.Cir. 2009) ...14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ..............13

*Finnigan Corp. v. United States Int'l Trade Comm'n*, 180 F.3d 1354
(Fed. Cir. 1999)..........................................................................................................17

*Forest Group v. Bon Tool Co.*, 590 F.3d 1295 (Fed.cir. 2009) .......................................22

*Gorham Mfg. Co. v. White,* 81 U.S. 511 (1872) .........................................................4, 5

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) ..............................................................18

*Hess v. Advanced Cardiovascular Sys.,* 106 F.3d 976 (Fed. Cir. 1997)........................14

*Henglein v. Colt Indus.*, 260 F.3d 201, 209 (3d Cir. 2001) ...........................................23

*Hoop v. Hoop*, 279 F.3d 1004, 1007(Fed. Cir. 2002).  .............................................15, 16

*Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233 (Fed. Cir. 2009) .........8

*Interconnect Planning Corp. v. Feil*, 774 F.2d 1132 (Fed. Cir. 1985) ..........................11

*Junker v. Eddings*, 396 F.2d 1359 (Fed. Cir. 2005) .................................................. 1, 2l 24

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).......................................................18

*L.A. Gear, Inc. v. Thom McAn Shoes Co.*, 988 F.2d 1117 (Fed. Cir. 1993) ...........4, 9, 10

*Microsoft Corp. v. i4i Ltd.  Partnership*, 131 S.Ct. 1843 (2011)..............................10, 26

*Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288
F.3d 519 (3d Cir. 2002)...............................................................................................23

*Nike, Inc. v. Wal-Mart Stores*, 138 F.3d 1437 (Fed. Cir. 1998).....................................21

*P&G v. Teva Pharms. USA, Inc.*, 566 F.3d 989 (Fed. Cir. 2009).....................................4

*Panduit Corp. v. Dennison Mfg Co.,* 810 F.2d 1561 (Fed. Cir. 1987) ....................10, 26

iv

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985 (Fed.Cir. 1993) ................5

*Raytech Corp. v. White,* 54 F.3d 187 (3d Cir. 1995) ......................................23

*Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998) ......................................23

*Sanofi-Synthelabs v. Apotex, Inc*. 470 F.3d 1368 (Fed. Cir 2006)..................10

*Seborowski v. Pittsburgh Press Co*., 188 F.3d 163 (3d Cir. 1999)................23

*Services Inc.* v. *Gaudet*, 414 U.S. 573 S. Ct. 806, 39 L. Ed. 2d 9 (1974)......................25

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613 U.S.P.Q. (BNA) (Fed. Cir. 1985)................................................................15

*Taylor v. Sturgell*, 553 U.S. 880 S. Ct. 2161, (U.S. 2008) ............................25

*Texas Digital Sys., Inc. v. Telegenix., Inc*. 308 F.3d 1193 (Fed. Cir. 2002)..................12

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) .............14

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed.Cir. 2009) ...............18

*Wine Railway Appliance Co., v. Enterprise Railway Equip. Co.*, 297 U.S. 387 (1936)................................................................12

*Zemon*, 40 C.C.P.A. 1051, 205 F.2d 317 U.S.P.Q. (BNA) 223 (CCPA 1953)..............15

## RULES & STATUTES

35 U.S.C. §101................................................................11, 19

35 U.S.C. §102................................................................11, 14, 19, 23, 24, 26

35 U.S.C. §103................................................................11, 18, 19

35 U.S.C. §112................................................................11

35 U.S.C. §282................................................................10

35 U.S.C. §286................................................................12

35 U.S.C. §287................................................................12

35 U.S.C. §289 ..............................................................................20, 21, 22, 23

Fed. R. Civ. P. 56(a) .......................................................................................3

Rule 9, FRCP .........................................................................................13, 14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LARRY G. JUNKER** | § | **CIVIL ACTION** |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **MEDICAL COMPONENTS, INC. et al** | § | **NO. 2:13-CV-04606-LFR** |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**
**ON INVALIDITY, INFRINGEMENT AND DAMAGES**
**AND REQUEST FOR ORAL ARGUMENT**

## I.    INTRODUCTION

Plaintiff hereby brings its motion for summary judgment on three separate aspects of the

case:  1) the patent is infringed, 2) Plaintiff has been damaged, and 3) none of Defendants' properly

pleaded defenses can survive summary judgment.  The motion is based, in part, on deposition

testimony from Defendants on Rule 30(b)(6) topics and financial documents produced by

Defendants calculating their profits.  This is particularly the case where the patent not only enjoys a

statutory presumption of validity, but has a heightened presumption due to the patent having

survived a previous litigation and reexamination by the Patent Office.  Defendants' positions in this

case are largely based on disagreeing with their own 30(b)(6) testimony, disagreeing with their own

damage calculations, and the pursuit of defenses that were either never pleaded or cannot be

established by competent evidence produced in a timely manner during discovery.

## II.    FACTUAL BACKGROUND

The essential factual background is not in dispute[1].  In approximately 1998, Plaintiff Junker

had an idea for a new introducer sheath that included a handle design.  Junker Decl. ¶ 5.  He entered

---

[1] These facts were previously established in large part in the *Junker v. Eddings* litigation and set forth in the Federal Circuit's affirmance at 396 F.3d 1359 (Fed. Cir. 2005), and are no less true today.  See also Declaration of Larry Junker filed and served herewith, along with other cited material.

into a non-disclosure agreement with James Eddings, the owner of Galt Medical, and disclosed his invention.  Eddings Depo., Tab 4 (SJM0000251); Junker Decl. ¶ 7[2].  Galt and its sister company Xentek proceeded to manufacture a device which included the ornamental handle, according to Mr. Junker's invention.  Junker Decl. ¶¶ 7-12. The invention pertained to the ornamental appearance of the handles in an enlarged rounded, or Mickey Mouse shape, the previous handles having been square, rectilinear and other shapes.  US Patent No. D430,839, Tab 16 (SJM0000419-25).  Mr. Junker filed a design patent application in February 2000 claiming his ornamental design.  He discovered that Galt was selling an infringing device and sued successfully for patent infringement.  See *Junker v. Eddings*, 396 F.2d 1359 (Fed. Cir. 2005).

One issue in that case was whether a design engineer/draftsman, Richard Gillespie, or Mr. Eddings had first invented the ornamental design by reference to a patent filed by Galt naming Mr. Gillespie as the inventor, U.S. Patent No. 6,336,914, Tab 17 (SJM0000426-41).  The court and jury in that case found that Mr. Junker was the first inventor and that Mr. Gillespie's '914 patent did not invalidate Mr. Junker's patent.  Court's Jury Charge, Tab 21, Question 7 (SJM0000488); Judgment, Tab 21 (SJM0000493-95); and Injunction, Tab 22 (SJM0000496).  Mr. Eddings and Mr. Gillespie both testified in that case and nothing new has been produced from them in this case.  See Eddings Depo., Tab 4 (SJM0000239); Gillespie Depo., Tab 5 (SJM0000322-24).  Mr. Junker's patent later was involved in a reexamination proceeding at the Patent Office and it successfully overcame all cited prior art, including the '914 patent.  See Notice of Intent to Issue Ex Parte Reexamination Certificate, Tab 31 (SJM0000520-23); Invention Disclosure Statements, Tab 25 (SJM0000502-03) and (SJM0000506-12).

Plaintiff discovered that Defendants were selling infringing devices and brought this suit.

---

[2] Mr.Gillespie was largely kept in the dark regarding conversions between Eddings and Mr. Junker. Gillespie Depo., Tab 5 (SJM0000327-28).

The overall visual impression of the handle shown and claimed in the '839 Patent is a two part ear-shaped hub with an upward curvature and ribbing on the top and bottom that conform generally to the outline of the rounded edges.  Defendants' products infringe the patent as we set forth below, and Plaintiff is entitled, at his option, to Defendants' profits obtained for sales of the infringing devices.

## III.     THE STANDARDS FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment on an issue or claim is proper when "drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant can not prevail." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998).  The mere existence of some evidence in support of the non-movant, however, will not be sufficient to defeat a motion for summary judgment; there must be enough evidence to enable a reasonable jury to find for the non-movant on that issue taking into account the evidentiary standard applicable to those claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  As a result, if the non-movant fails to make a sufficient showing on an essential element of its case for which it has the burden of proof, the movant "is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted).

Further, if the evidence is subject to a clear and convincing standard of proof, the evidence in support of such a claim must be of the quality that a jury could find in the nonmovant's favor under that standard.  *See Anderson v. Liberty Lobby, Inc*. adjudicating summary judgment applying the clear and convincing standard of actual malice in assessing the party's proof.  The Federal Circuit has recognized, under the Supreme Court's guiding precedent,

that "[w]hen evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) (citing *Anderson*). "Clear and convincing evidence places in the fact finder 'an abiding conviction that the truth of [the] factual contentions are highly probable.'" *P&G v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (alteration in original) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984).

## IV.    DEFENDANTS INFRINGE THE PATENT IN SUIT

Defendants' products appear substantially the same as Junker's design to an ordinary purchaser giving the amount of time one takes in making such a decision, which is the test for design patent infringement.  *See Gorham Mfg. Co. v. White,* 81 U.S. 511, 528 (1872)); *L.A. Gear, Inc. v. Thom McAn Shoes Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993) and *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 670, 678 (Fed. Cir. 2008) (*en banc*).  Federal Circuit precedent confirms that design patent infringement does not require consumer deception.  In *L.A. Gear, Inc.,* 988 F.2d at 1120-21 (Fed. Cir. 1993), the district court found the defendant liable for both design patent infringement and unfair competition based on trade dress infringement.  On appeal, the Federal Circuit reversed the finding of unfair competition because it found that purchasers were unlikely to be deceived into buying the accused product thinking it was the plaintiff's product.  *Id.* at 1134.  The Federal Circuit nonetheless found design patent infringement, emphasizing that "[d]esign patent infringement relates solely to the patented design, and does not require proof of unfair competition in the marketplace." *Id.* at 1126. Similarly, in *Braun, Inc. v. Dynamics Corp.*, 975 F.2d 815, 821 (Fed. Cir. 1992), the defendant argued that "a trier of fact may not as a matter of law find design patent infringement," unless

there is empirical "evidence that the blender's design would deceive ordinary observers."  The Federal Circuit held that the defendant waived this argument by failing to present it to the district court but went on to observe that "[n]othing in *Gorham* suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely exclusively or primarily on a visual comparison of the patented design, as well as the device that embodies the design, and the accused device's design." *Id.*  The issue is whether "the effect of the whole design [is] substantially the same" – "minor differences between a patent design and an accused article's design cannot, and shall not, prevent a finding of infringement.  *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 991 (Fed.Cir. 1993) (citations and internal quotes omitted).[3]

Defendants' depositions were taken under Rule 30(b)(6) of the FRCP on various topics including infringement one month before the original discovery cutoff date.  Notice of 30(b)(6) Deposition, Topic No. 2, Tab 7 (SJM0000388-94).  A company representative, president Timothy Schweikert, was produced to provide both Defendants' position on infringement.  Defendants testified and admitted that the ordinary purchaser given the amount of time taken in buying the products would think the Defendants' products were the same as the design shown in the Junker patent:

> Q. Okay. Now, given the attention that is given in purchasing these products to
> the  peel-away, do you think these consumers would recognize the difference
> between the Super Sheath II and the design patent, given the amount of time they
> take and --
> A. Between what's there in the design patent?
> Q. Yes.
> A. No.
> Q. How about, would they make a distinction between Exhibit 7 [valve tearaway]
> and the design patent?

---

[3] Indeed, in the Supreme Court's landmark *Gorham Mfg. Co. v. White,* 81 U.S. 511, 528 (1872)) case, the accused spoon had noticeable differences from the patent design.  It was nonetheless held to infringe under the "ordinary observer" test based on overall impression.

      A. Probably not.

30(b)(6) Schweikert Depo., Tab 1 (SJM0000029, SJM0000031).  Further, Defendants testified

that they changed the design because they believed they infringed:

> Q. Why are you abandoning that shape, which you claim to be the most efficient
> shape, for these other styles?
> A. I think it's more just to make it different from this one.
> Q. Because of the lawsuit?
> A. Some, yeah. Primarily, yeah.

Schweikert Depo., Tab 1 (SJM0000027).  The head of engineering also testified that the changes

were made to avoid the Junker patent and infringement.  At an initial meeting with the president

of the company, he reviewed the Junker patent and lawsuit, discussed changing the design to

avoid the rounded ear configuration:

> Q. So your discussion with Mr. Schweikert was to attempt to change the design of
> the handle so as to make it look different than the Junker patent?
> A. Yes.
> Q And what features did you focus on in that discussion
> A. The profile of the hub.
> Q. Principally your focus was on the shape of the two tabs?
> A. Yes

Sanford Depo., Tab 82 (SJM0001433).  Defendants should not be permitted to now change their

position and testimony through the mouth of a paid expert.

      The products at issue are shown in the Appendix at Tab 29 (SJM0000515-17), Tab 34

(SJM0000533-35), Tab 33 (SJM0000530-32), Tab 37 (SJM0000542-43) and Bressler Expert

Report, Tab 77, Exhibit D (SJM0001099-1100).  They comprise the so-called Super Sheath,

Super Sheath 2.0, Valve Tearaway and Valve Tearaway 2.0.  Each of the designs is compared to

the design patent by Plaintiff's expert and found to contain the same visual appearance to the

relevant purchasing persons.  See Bressler Tab 77, ¶¶ 42-51 (SJM0001066-68) and Exhibit D.

And as previously noted, Defendants admitted that customers would confuse the two as being the same design.  30(b)(6) Schweikert Depo., Tab 1 (SJM0000029, SJM0000031).

Exhibit D of Plaintiff's Expert Report is shown below with the design drawings at top:



From U.S. D450,839

Super Sheath V1

Super Sheath V2

Valved Tearaway V1

Valve Tearaway V2

Defendants also testified that the design was purely functional, thus negating any claim construction they would provide in this case, since the claim has to cover the "ornamental" features:

> Q. Okay. In Defendants' view, is there any aspect of design Patent [D]450,839 which is not functional?
> A. No.
> ***
> Q. Is it fair to say that Defendants do not believe that there are any ornamental features to the patent in suit?
> A. There are none.
> Q. So you believe that all the features are primarily functional?
> A. Yes.
> Q. And is that a basis on which you believe you don't infringe the patent?
> A. Yes.

Schweikert Depo., Tab 1 (SJM0000028, SJM000034).  As Defendants do not believe there are any, and testified there are no, ornamental features, any claim construction pertaining to ornamental features they now provide is directly contrary to the admissions and position taken at their Rule 30(b)(6) depositions.  There has to be some consequence of discovery and Defendants should not be permitted to provide Plaintiff one position under oath on behalf of the company, and a second, different position through their attorneys and experts.

Nonetheless, as set forth in the expert report of Peter Bressler, the designs of the four accused product types, the Super Sheath, Super Sheath 2.0, Valved Tearaway, and Valved Tearaway 2.0, each infringes the patent as properly construed.  Bressler Declaration and Expert Report, Tab 77.  The proper construction can be found in Plaintiff's Response to the Motion for Claim construction to be filed February 20, 2105, but is briefly presented here.

The designs are "substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary] observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).  In applying the ordinary observer test, the focus should be on "the overall design" of the patent. *See Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-41 (Fed. Cir. 2009).

The Federal Circuit has cautioned that a trial court is not to approach a design patent claim construction in the same manner as a utility patent claim construction.  *See Egyptian Goddess*, 543 F.3d at 680 ("[A]s a general matter, [trial] courts should not treat the process of claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents.").  The Federal Circuit has cautioned against attempts to "construe" design patent claims by providing a detailed verbal description of the

claimed design.  *Egyptian Goddess*, 543 F.3d at 679.  Indeed, the Federal Circuit has explicitly

approved of a district court's construction of the asserted design patent claim as meaning "[a

tray] of a certain design . . . as shown in Figures 1-3," and has reversed an infringement

determination based on a written claim construction that impermissibly focused on particular

features of the design patent-in-suit.  *Contessa Food Prods. v. Conagra*, 282 F.3d 1377, 1377

(Fed. Cir. 2002), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665; *Crocs, Inc. v.

ITC*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010) (finding that the "Commission placed undue

emphasis on particular details of its written description of the patented design" and that "the

concentration on small differences in isolation distracted from the overall impression of the

claimed ornamental features.").

 The Court should construe the claim as follows "The D'839 Patent claims the ornamental

design for a handle for introducer sheath, as shown in Figures 1 through 9.  The broken lines in

the D'839 Patent constitute unclaimed subject matter."  Generally, the dominant visual

impression is to a generally rounded two ear tab with an upswept configuration and ribbing on

the top and bottom that generally conforms to the outline of the rounded ears.  Other features

shown in the drawings are either purely functional or primarily functional, as asserted by

Defendants, and do not contribute to the overall visual impression.

 With this construction, it is clear that the patent is infringed.  Defendants cannot alter the

admissions contained in their depositions, which show that the products infringe the patent.

 A patented design is "functional" only if the design is "dictated by" function.  Relying on

Federal Circuit authority, a design is not "functional" merely because it has "a utilitarian

purpose" or "enhance[s] the user experience;" rather, the design must be "dictated by function."

*L.A. Gear,* 988 F.2d at 1123.  The relevant inquiry for invalidity is not "the utility of each of the

various elements that comprise the design," but the functionality of the patented design "as a whole." *L.A. Gear,* 988 F.2d at 1123. Thus, a proper claim construction should not unduly emphasize individual features but must encompass the overall visual impression of the design. With that construction and Defendants' admissions during discovery, there is no triable issue of fact on infringement. Defendants' current argument and expert rely primarily on an improper claim construction and untimely produced evidence or witnesses not identified properly during discovery.

## V.   DEFENDANTS CANNOT ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THE PATENT IS INVALID

Junker's patent enjoys a presumption of validity, and Defendants will be unable to rebut that presumption. A patent is presumed valid. See 35 U.S.C. §282. The presumption of validity applies to "all of the many bases for challenging a patent's validity." *Panduit Corp. v. Dennison Mfg Co.,* 810 F.2d 1561, 1569 (Fed. Cir. 1987). See also *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238 (2011). As a result, Defendants must prove its invalidity defenses by "clear and convincing evidence." See *Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 138 (Fed. Cir. 1986). Accordingly, Plaintiff is entitled to summary judgment if no reasonable trier of fact could conclude that Defendants had evidence of invalidity by clear and convincing evidence. Or, to put it another way, summary judgment must be granted if no reasonable trier of fact could conclude that Defendants had proved their defenses by clear and convincing evidence. This presumption is even greater where the patent has successfully withstood a reexamination making the presumption "especially difficult" to overcome[4]. *Sanofi-Synthelabs v. Apotex, Inc*. 470 F.3d 1368, 1375 (Fed. Cir 2006). See also *Am. Hoist & Derrick*

---

[4] Here that burden is even higher as the patent was specifically litigated and found valid over a claim under 35 U.S.C. §102(e), the same defense Defendants appear to be attempting to present here, despite not having pleaded it in their answer.

*Co. v. Sowa & Sons, Inc*. 725 F. 2d 1350,1360 (Fed. Cir. 1984) ("When an attacker simply goes

over the same ground travelled by the PTO, part of the *burden* is to show that the PTO was

wrong in its decision to grant the patent.")  As the Federal Circuit has observed: [A]n examiner's

decision on an original or reissue application is 'evidence the court must consider in determining

whether the party asserting invalidity has met its statutory burden by clear and convincing

evidence', and that, upon reissue, the burden of proving invalidity was 'made heavier.'" *Custom*

*Accessories, Inc. Jeffrey-Allan, Indus. Inc.,* 807 F. 2d 955, 961 (Fed. Cir. 1986) (citing

*Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985).

Defendants cannot establish any of their defenses of invalidity with evidence of a quality

that satisfies its burden of clear and convincing proof.  It is not enough to have some evidence,

but rather, it must be of the nature and quality that a jury could find invalidity by clear and

convincing standard.

### A.  Affirmative Defenses Nos. Three, Four, Five, Six and Seven

In the Third Affirmative Defense, Defendants have asserted, with absolutely no factual

allegations, defenses of invalidity under a slew of patent statutes including "35 U.S.C. §§101,

102, 103 and/or 112."  See Dkt. No. 11.  Allegations of this nature do not state a claim and are

insufficient on their face under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendants' Affirmative Defense is similar to pleadings that previously have been declared

insufficient.  More particularly, another district court found "One or more of the claims of [the

patent] are invalid under 35 U.S.C. §103" and "One or more of the claims of [the patent] are

invalid as being indefinite under 35 U.S.C. §112, second paragraph" to be "pleaded in entirely

conclusory fashion, with no supporting facts of any kind" and to accordingly "run afoul of the

pleading standards enunciated by the Supreme Court in *Bell Atlantic*."  *Bartronics, Inc. v.*

*Power-One, Inc.*, 245 F.R.D. 532, 537 (S.D. Ala. 2007); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. at 544. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citation omitted). If the pleadings do not provide "enough facts to state a claim to relief that is plausible on its face," then the claim "must be dismissed." *Id.* at 570. Defendants never amended these allegations and they fail as a matter of law[5].

Further, there is no evidence in support of these defenses and they should be dismissed on summary judgment under the standards set forth above. Defendants cannot meet their burden of establishing a defense under any of the cited statutes and they must be dismissed on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Fourth Affirmative Defense under 35 U.S.C. §§286 and 287 fails on its face. Section 287 is the marking statute that cuts off damages for makers of a product that fail to mark with their patent number. A plaintiff who does not manufacture a product is not required to mark or give notice before seeking damages. *Texas Digital Sys., Inc. v. Telegenix., Inc*. 308 F.3d 1193, 1219 (Fed. Cir. 2002). This has been the law for over 78 years. See *Wine Railway Appliance Co., v. Enterprise Railway Equip. Co.*, 297 U.S. 387 (1936)[6]. There is no valid defense under these statutes. Nor is the statute any basis to cut off damages in this case. The damage period begins six years before suit was filed. 35 U.S.C. §286.

The Fifth Affirmative Defense—a listing again of a slew of equitable defenses for waiver, estoppel, laches, unclean hands, and/or other "applicable equitable defenses"—fails to

---

[5] It seems anomalous that a claim that fails under *Twombly*, *i.e.*, does not state a claim, fares any differently than if the claim was not brought at all. Defendants had numerous opportunities to provide sufficient factual allegations on their defenses and at this point these claims must be dismissed with prejudice. It is no argument that *Twombly* was a pleadings case, as the essential teaching is a claim to be cognizable at any point in the litigation must meet certain minimum standards to put a party on notice of the claim.

[6] As more fully shown in our Motion to Exclude the Damages Report of Smith, Defendants' asserted cutoff of damages as of the date of suit is unsupported by the law and demonstrates the expert is not using a proper methodology and her report should be barred on that basis, among others.

state a claim.  See *Twombly, supra*.  Moreover, Defendants have no evidence to support a

defense of waiver, estoppel, laches or unclean hands.  Indeed, any claim for unclean hands would

be in the nature of a claim for inequitable conduct and must be plead with particularity.  See Rule

9, FRCP.

Similarly, the Sixth Affirmative Defense regarding prosecution history estoppel is

without factual support.  Plaintiff must have surrendered some aspect of the claim by amendment

to constitute an estoppel.  The doctrine "arises when an amendment is made to secure the patent

and the amendment narrows the patent's scope."  *Festo Corp. v. Shoketsu Kinzoku Kogyo

Kabushiki Co.*, 535 U.S. 722, 736 (2002).  There was no amendment made during prosecution of

this patent, nor has Defendant pointed to one.  Indeed, Defendants' patent law expert

Mossinghoff makes no mention of prosecution history estoppel.  It is unclear how the

prosecution bears on the claim, and Defendants have not pointed out how estoppel applies in this

case.  Again, Defendants' arguments are based on inequitable conduct, an issue that is not in this

case in the form Defendants currently seek to apply the defense.  Defendants cannot establish

with clear and convincing evidence the defense of prosecution history estoppel.

### B.  Fraud Claims and Failure to Identify Co-Inventors

Defendants' attempt to invalidate the patent under a theory that there are additional

unnamed inventors is, at core, another fraud claim.  Defendants are asserting that Mr. Junker lied

under oath and failed to identify other inventors to the design.  *See* Supplemental Interrogatory

No. 7 Response, Tab 41 (SJM0000710-11).  Indeed, in Defendants' paper on the crime fraud

exception, they asserted "Junker's false claim of sole inventorship is fraud and any privilege he

may claim has been vitiated by the crime fraud exception."  Dkt. 69, p. 2.  This fraud claim has

not been pleaded in the answer, nor is it in the case.  To the extent any fraud claim remains in the

case, Defendants cannot establish the requisite elements with clear and convincing evidence to overcome summary judgment.

First, "[t]o prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  Gross negligence or negligence are insufficient.  *Id*.  It also must be shown by clear and convincing evidence.  *Id*. at 1291.  Second, "the materiality required to establish inequitable conduct is 'but-for' materiality.  When an applicant fails to disclose prior art to the U.S. Patent and Trademark Office 'PTO', that prior art is 'but-for' material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."  *Id*.  These matters must be plead with particularity as well under Rule 9(b) FRCP.  *Exergen Corp. v. Wal-Mart Stores, CVS, and SAAT*, 575 F.3d 1312, 1326-27 (Fed.Cir. 2009).

Further, the patent is presumed valid and that includes the identification of the inventor.  See *Hess v. Advanced Cardiovascular Sys.,* 106 F.3d 976, 979 (Fed. Cir. 1997).  As noted in *Hess*, "the burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence."  *Id.* at 979.  There is no defense of "inventorship" as such, apart from a claim for inequitable conduct or under §102(f).  The assertion that others should be named inventors is a fraud claim that Mr. Junker knowingly did not name the co-inventors.  Yet, Defendants have not asserted any fraud claim in this case.  Any claim under §102(f) was likewise not pleaded in the Answer or in their supplemental answers to interrogatories.  See Tab 41 (SJM0000710-11).  The Court will find no mention of §§102(e) or (f) in the discovery responses regarding claims under §102 and Eddings/Gillespie as "inventors," apart from what is mentioned for the first time in the expert report of Mossinghoff.  Compare

Supplemental Interrogatory No. 7 Response, Tab 41 (SJM0000710) and Mossinghoff Expert

Report., Dkt. No. 69-12.  All of these arguments are based on inequitable conduct and are not in

the case.

 Moreover, there is no evidence that anyone invented the design before Mr. Junker.  It is

undisputed and was established in the prior litigation that Mr. Junker was the first to invent the

ornamental design shown in the patent.  Further, on reexamination, the patent office specifically

found that the Gillespie patent and his invention was non-enabled prior art, and did not anticipate

the invention shown in the Junker patent.  See Reexam Decision, Tab 31 (SJM0000520-23).  It is

clear that no reasonable jury could find the Gillespie patent is invalidating prior art by clear and

convincing evidence in the face of the previous litigation and the reexamination.  Further, such a

waste of judicial resources is unwarranted when the claim has never been alleged in the answer,

or any amended answer.

> "An inventor under the patent laws is the "person or persons who conceived the
> patented invention." *C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1352, 48
> U.S.P.Q.2D (BNA) 1225, 1232 (Fed. Cir. 1998).  An inventor may then "use the
> services, ideas, and aid of others in the process of perfecting his invention without
> losing his right to a patent." *Ethicon, Inc. v. United States Surgical Corp.*, 135
> F.3d 1456, 1460, 45 U.S.P.Q.2D (BNA) 1545, 1548 (Fed. Cir. 1998) (citing
> *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624, 225
> U.S.P.Q. (BNA) 634, 641 (Fed. Cir. 1985)).  The facts are undisputed that the
> Hoop brothers were the first to conceive of the eagle-shaped fairing guards, and
> brought the concept to Mark and Lisa for assistance. Thus in the absence of the
> inventive quality required for a patentable design on the part of Mark and Lisa,
> the Hoop brothers remain the true inventors."

*Hoop v. Hoop*, 279 F.3d 1004, 1007(Fed. Cir. 2002).  As the Federal Circuit noted,

> "[o]ne may not qualify as a joint inventor, or as here, a new inventor, by 'merely
> assisting the actual inventor *after conception* of the claimed invention.'  *Ethicon*,
> 135 F.3d at 1460, 45 U.S.P.Q.2D (BNA) at 1548 (emphasis added).  Minor
> differences between the prior art and the new claim will not suffice.  *In re
> Zemon[full cite]*, 40 C.C.P.A. 1051, 205 F.2d 317, 320, 98 U.S.P.Q. (BNA) 223,

224 (CCPA 1953).   The differences here must be substantial and not just superficial; the new design must contain an inventive concept.  *Id.*"

*Hoop,* at 1007.

Neither Mr. Eddings, nor Mr. Gillespie conceived of a patentable invention.  Indeed, Defendants do not even claim that Eddings or Gillespie conceived of a patentable ornamental design.  Rather they contend they contributed certain features to the final production product.  It is clear from the testimony that Mr. Junker conceived of a two eared Mickey Mouse shaped design as shown in the patent.  See Junker Decl., ¶¶ 7-15.  Even Mr. Gillespie testified that Mr. Junker was the inventor of the ornamental design as shown in Figures 5 and 7 of the patent.  During direct testimony by his own attorney, the same attorneys representing Defendants, Mr. Gillespie was asked what contribution did Mr. Junker make to the design and **he identified Figures 5 and 7 of the patent**.  For reference Figures 5 and 7 are shown here:



"Q.  What was Mr. Junker's contribution to the drawing shown in Figures 5, 6, and 7?

A.  Mr. Junker's contribution was directed to the more -- to the bulbous shape, sort of hourglass shape that is described in Figures 5 and Figure 7 in which the handles take a -- sort of circular shape in the exterior -- the -- into the extremities of the -- of the handle that's shown in Figures 5 and 7.

Q.  How did he contribute to that design?

A.  It was through communications that he had with Mr. Eddings and myself, both verbally in the course of the meeting that we have already described and -- and in follow-up communications that were illustrations or sketches were provided."

Gillespie Depo., Tab 5 (SJM0000309).  Any after the fact contributions made by Mr. Eddings or Mr. Gillespie were in the prior art such as upswept wings, ribs and rounded corners (See Defendants' Response to Interrogatory No. 7, Tab 40 (SJM0000622-23)), or were minor differences that do not constitute conception of an invention.

As to Mr. Eddings, he simply did not invent anything claimed in the patent.  His self-aggrandizing assertion of having sole "invention" or "contribution," which is completely uncorroborated, is to smoothing out some edges on the ears.  Mr. Eddings' testimony does not establish a conception of any invention, particularly as it comes almost 15 years after the events in question.  There is no evidence that Mr. Eddings was involved in the conception of a complete ornamental design to warrant him being named an inventor.  To meet the burden of clear and convincing evidence, "an alleged co-inventor must supply evidence to corroborate his or her testimony."  *Caterpillar Inc. v. Sturman Indus., Inc.,* 387 F.3d 1358, 1377 (Fed. Cir. 2004).  "The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony.'" *Checkpoint Sys. v. All-Tag Sec. S.A.* , 412 F.3d 1331, 1339 (quoting *Finnigan Corp. v. United States Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999)).  Thus, "the Supreme Court recognized over one hundred years ago that testimony concerning invalidating activities can be 'unsatisfactory' due to 'the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury.'" *Finnigan at 1366.*

Both Mr. Eddings and Mr. Gillespie are highly unreliable witnesses and deeply interested in an outcome in favor of Defendants.  Indeed, Mr. Eddings stated he was more than "outraged" at the outcome of the prior litigation.  Eddings Depo., Tab 4 (SJM0000246) "I'm not sure

[outraged] describes it adequately." Mr. Gillespie's contributions were to functional elements, in any event, such as the flat portion on the top or to features such as upswept ears, that were in the prior art. None of their so-called contributions are contributions to the patentable invention.

### C. The Patent is Not Invalid Under 35 USC §103 for Obviousness

Defendants' only defense of invalidity that was actually pleaded and claimed in their expert report is under Section 103 for obviousness.[7] The Federal Circuit have held that design patent obviousness requires Medcomp to identify (1) a primary prior art reference whose overall visual impression is "basically the same" as the patented design; and (2) a secondary prior art reference whose overall appearance is so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features in the other. *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1329-30 (Fed. Cir. 2012) (citations omitted).

The factual inquiries underlying the obviousness inquiry are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)); *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1332 (Fed. Cir. 2012).

"To determine whether 'one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design,' the finder of fact must employ a two-step process." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1329

---

[7] Defendants have not asserted the patent is invalid due to prior art under section 102. Defendants' other 102(b) argument regarding on sale has not been allowed in their proposed amended answer. Any other on sale bar has not been pleaded and cannot be proven. Plaintiff moves on summary judgment that Defendants cannot prove an on sale bar under the applicable standards.

(Fed. Cir. 2012) (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1381 (Fed.

Cir. 2009)). "First, 'one must find a single reference, a something in existence, the design

characteristics of which are basically the same as the claimed design.'" *Id.* at 1329 (quoting

*Durling v.Spectrum Furniture Co.,* 101 F.3d 100, 103 (Fed. Cir. 1996)). "Second, 'other

references may be used to modify [the primary reference] to create a design that has the same

overall visual appearance as the claimed design.'" *Id.* "However, the 'secondary references may

only be used to modify the primary reference if they are so related to the primary reference that

the appearance of certain ornamental features in one would suggest the application of those

features to the other.'" *Id.* at 1329-30 (quoting *Durling,* 101 F.3d at 103).

Defendants' assertion that the Gillespie '914 patent is a primary reference is completely

undercut by the patent office having already determined it is non-enabling art and not

anticipatory in the reexamination.  The heightened presumption that applies to this case makes

any claim under this theory, already tried once in federal court and rejected a second time during

reexamination not sufficient for any jury to find a clear and convincing case of invalidity.

Indeed, the primary and most secondary references cited in the Meystt Report were before the

PTO during prosecution and reexamination.  IDS's, Tab 25 (SJM0000502-03) and Tab 27

(SJM0000506-12).

### D.  The Patent is Not Invalid Under 102(b) On Sale

Defendants have asserted in the 11th hour a claim that the patented design was on-sale

more than one year prior to the filing date.  Defendants asserted this claim in the Second

Amended Answer and as we demonstrated in Plaintiff's opposition, it was demonstrably

unprovable as the sale event was after the filing of the patent.  No other on sale bar has been

included in Defendant's current answer or attempted amended answer.

Defendants asserted another on sale defense for the first time in an amended interrogatory response to No. 7 served December 17, 2014 after the close of discovery after business hours at 6:36 p.m. Eastern Time.  This defense is unpleaded, untimely under Rules 26 and 37 and should not be considered.[8]  Defendants could have learned of any of these facts months ago by taking Mr. Eddings deposition in a timely manner.

Further, Defendants cannot establish the elements by clear and convincing evidence of an on-sale bar under applicable case law.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  As a result, if the nonmovant fails to make a sufficient showing on an essential element of its case for which it has the burden of proof, the movant "is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted).  The claim should be dismissed as Defendants cannot make the proper showing to establish the defense.

## VI.    THE DAMAGE AMOUNT UNDER 35 USC §289 FOR PROFITS ARE UNDISPUTED

Assuming the patent is infringed and not proved invalid, there is no genuine issue of disputed fact regarding Defendants' profits.  Profits are one measure of damages Plaintiff may elect to pursue in a design patent case[9].  This remedy begins with undisputed facts.  Martech admits its total "adjusted gross profit" as identified in its own documents.[10]  See Schweikert Depo. Tab 1 (SJM0000072-4, 87-93, 95-6); Martech Sales/Profits Calculations, Tab 39 (SJM0000556-9) (Total Martech sheath profits on SJM0000559).  Medcomp admits that its total sales revenue from selling the accused products in kits in the United States were substantial

---

[8] Plaintiff will separately move to strike this and other untimely disclosures and evidence after motions for summary judgment are filed.

[9] Plaintiff may elect to pursue either 1) no less than a reasonable royalty under 35 USC §284, or 2) a defendant's profits under 35 USC §289 for each Defendant.  This motion pertains solely to profits for both Defendants.  Plaintiff will elect for each Defendant how it may proceed during the pre-trial process.

[10] Due to the protective order, the actual amount is contained in the attorney's eyes only portion of the Appendix.

through May 2014 and even using its numbers, admits significant profits allocated to the

introducer sheaths.  See Schweikert Depo., Tab 2 (SJM0000099-111); Medomp Sales/Profits

Calculations, Tab 39 (SJM0000560-609) (Total Medcomp Sheath Profit attributable from kit

sales is on SJM0000609).  By simply adding the figures on Defendants' own calculations on

SJM0000569 and SJM0000609, one can arrive at a minimum total profit attributable to sales of

infringing product.  Plaintiff seeks summary judgment on this amount as admitted profits by

Defendants as a minimum.

 Defendants produced documents in response to Plaintiff's interrogatory that sought their

sales and profits of infringing product.  They verified the interrogatory response and testified to it

at the Rule 30(b)(6) deposition.  There simply is no dispute in the record regarding Defendants'

profits as they calculated it themselves and cannot now dispute their own numbers.  This is not a

genuine issue for trial, assuming there is infringement and the patent is not found invalid.

 The law provides that anyone who sells "a colorable imitation" of a patented design

"shall be liable to the [patent] owner to the extent of his total profit." 35 U.S.C. §289 (2006). The

Federal Circuit has held that "total profit" means exactly that—all profits received by the

infringer for sale of the product without reducing that profit to account for the alleged

contribution of the patented design.  *Nike, Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1442 (Fed.

Cir. 1998); *see also Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 495 (D. Minn. 1980).

And damages can be obtained for each person in the distribution chain, included all sales by

Martech to Medcomp.  *Id.* There simply is no dispute in the record and based on evidence

produced during discovery Defendants' own admitted profits should be determined without trial.

//
//
//
//

VII.   **THE COURT MAY IMPOSE A $250/UNIT STATUTORY
       DAMAGE UNDER 35 U.S.C. §289**

A provision in the design patent law asserts that damages, at a minimum in lieu of profits, should be $250.  Section 289 states in pertinent part:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, **to any article of manufacture** for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.   (emphasis added)

Although no case law has been found determining the scope of this remedy, there is a strong argument it may be assessed per unit.  In addressing a similar statute that has now been amended by Congress, the Federal Circuit imposed a per unit award for falsely marking a patented product. *Forest Group v. Bon Tool Co*., 590 F.3d 1295 (Fed.cir. 2009).  Under 35 U.S.C. §292 in existence at the time, the false marking statute stated:

> Whoever marks upon, or affixes to, or uses in advertising in connection with **any unpatented article**, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public . . . Shall be fined not more than $500 for every such offense.

35 U.S.C. §292(a) (2006). (emphasis added)

As the court noted in *Forest Group*, "The statute prohibits false marking of "any unpatented article,' and it imposes a fine for "every such offense." *Id*. at 1301.  This was determined to be a per unit assessment.

Similarly, section 289 refers to "any article of manufacture for the purpose of sale" with the penalty of $250 being imposed for the infringer's total profit on that article.  Total profit refers to the total profit of the individual item, without apportionment, which is the proper measure for profits on a design patent case.  Clearly, if a Defendant sold only one "article" it would be subject

to the $250 alternative remedy.  For the same reasons as expressed in *Forest Group, supra*, the $250 should be assessed per article.

In this case, it is undisputed the number of units sold by Defendant Martech.  See Martech damage calculations, Tab 39 (SJM0000556-9).  It is also undisputed the number of kits sold by Medcomp or handles individually.  See Medcomp damage calculations, Tab 39 (SJM0000560-609).  The total number of units sold by Defendants is readily calculable from their own documents.  See Tab 39 (SJM0000555-609).  Based on these numbers which come directly from Defendants' own calculations and were verified in interrogatory answers and 30(b)(6) depositions, Plaintiff requests a summary judgment that damages may be imposed per unit sold under section 289 in an amount at least equaling $250 per unit.

## VIII.   DEFENDANTS' DEFENSE UNDER 102(e) IS BARRED BY COLLATERAL ESTOPPEL[11]

The doctrine of collateral estoppel, or claim preclusion, is intended to avoid piecemeal and repetitive litigation of claims arising from the same events. *Churchill v. Star Enters*., 183 F.3d 184, 194 (3d Cir. 1999). "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id*. (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)).  Collateral estoppel applies to an issue previously litigated if the following is shown "'(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.'" *Henglein v. Colt Indus.*, 260 F.3d 201, 209 (3d Cir. 2001) (quoting *Raytech Corp. v. White,* 54 F.3d 187, 190 (3d Cir. 1995).  The court may also look at whether the party "had a full and fair opportunity to litigate the issue in question in the prior action," *Seborowski v.*

---

[11] To the extent these issues are in this case, Plaintiff moves for summary judgment.  The §102(f) claim was never pleaded or included in any discovery response.

*Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999), and whether the issue was determined by a final and valid judgment, *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 524-25 (3d Cir. 2002).

There can be no question the issue of inventorship under §102(e) was previously adjudicated, was actually litigated, and was necessary to the decision.  See Jury Verdict, Injunction and Judgment, Appx. 0475-95, 0496, and 0499-501; See also *Junker v. Eddings*, 396 F.3d 1359 (Fed. Cir. 2005).  Defendants' sole argument rests on their not being an actual litigant in the suit.  The issue of inventorship was fully and fairly litigated by a party with the highest level of motivation to litigate it—Galt and Mr. Eddings, the two defendants and claimants of co-inventorship to the patent.  The previous case was explicitly litigated on whether Mr. Junker was the first inventor, which of course, means he was the sole inventor.  The jury found that he was the first inventor of the subject matter in the design patent over the testimony of Mr. Eddings and Mr. Gillespie.  Defendants in this case were purchasers of the accused product in that case and were subject to the injunction issued by the Court.  See Injunction and Notice, Tab 22 (SJM0000496).  Further, under the current standards of *res judicata* and *collateral estoppel*, Defendants here should not be permitted to re-litigate an issue that is essentially a finding of the patent's validity putting all third parties on notice.  Defendants here have put forward no new evidence that was not before the Dallas jury.  Indeed, both Mr. Eddings and Mr. Gillespie testified in this litigation that they were not prevented from saying whatever they wanted in the Dallas case.  Gillespie Depo., Tab 5; 90:3-13 (SJM0000324).

It is irrelevant that certain issues may have been precluded in that lawsuit due to rulings of the Court or on appeal.  The issue is whether the factual and legal determination of

inventorship in Mr. Junker's favor was fully and fairly litigated. Of that, there can be no question[12].

The Supreme Court has noted collateral estoppel may apply to a new party, when its interests were fully litigated:

> "Third, we have confirmed that, "in certain limited circumstances," a nonparty may be bound by a judgment because she was "adequately represented by someone with the same interests who [wa]s a party" to the suit.  *Richards*, 517 U.S., at 798, 116 S. Ct. 1761, 135 L. Ed. 2d 76 (internal quotation marks omitted). Representative suits with preclusive effect on nonparties include properly conducted class actions, see *Martin*, 490 U.S., at 762, n. 2, 109 S. Ct. 2180, 104 L. Ed. 2d 835 (citing Fed. Rule Civ. Proc. 23), and suits brought by trustees, guardians, and other fiduciaries, see *Sea-Land Services Inc.* v. *Gaudet*, 414 U.S. 573, 593, 94 S. Ct. 806, 39 L. Ed. 2d 9 (1974). See also 1 Restatement §41.

*Taylor v. Sturgell*, 553 U.S. 880, 894-95, 128 S. Ct. 2161, 2172-73, (U.S. 2008).

The essential teaching is that collateral estoppel is not strictly limited to successors in interest or other contractual privies, but rather is flexible enough to encompass parties for which due process has been adequately addressed[13].

Defendants anticipated reliance on them not being in "privity" is a thin reed to stand on when they are in no better position to assert this defense than Galt was initially.  And, Defendants here rely on no new witnesses, but entirely on the same witnesses, Mr. Gillespie and

---

[12] Defendants may attempt to attack Galt's attorney based on Mr. Eddings having sued them after the verdict of $1.33 million was rendered.  Aside from the fact that claim was settled with no finding of malpractice, it proves nothing in that there could be many reasons for settlement, namely an insurance policy.  The question is not whether the previous decision was correct, but rather was it adjudicated.

[13] Defendants will no doubt seize on *Taylor's* rejection of "virtual representation" as their basis for avoiding the previous judgment.  But here, there is not only a prior relationship between Galt and Martech as supplier and customer, but Defendants' counsel, Novak Druce, also represented, as their client, Mr. Eddings and Mr. Gillespie, who were parties to the previous suit.  Defendants are, in effect, acting as a proxy for Mr. Eddings who is bound by the previous judgment.  See *Taylor* at 894.  See Eddings Depo., Tab 4 (SJM0000227-32); Gillespie Depo., Tab 5 (SJM0000317-21).

Mr. Eddings[14]. Further, as a purchaser of the infringing product in that case, Defendants were in privity as they were subject to the injunction as a party with notice acting in concert. Indeed, the Dallas Federal Court enjoined them in its order. There simply is no basis to re-litigate this issue when it was fully tried to a competent jury.

Moreover, to the extent Defendants seek to prove invalidity due to improper naming of inventors, this is yet another unpleaded fraud claim, not one under §102(e). Indeed, Defendants have asserted this claim repeatedly as a failure by Mr. Junker to name the appropriate inventors by virtue of his oath, which they assert "fraudulently" asserts he is the "sole" inventor. It is not sufficient to simply allege inventors should be named, one has to tie it into a defense cognizable under the patent law. The presumption of validity applies to "all of the many bases for challenging a patent's validity." *Panduit Corp. v. Dennison Manufacturing Co.,* 810 F.2d 1561, 1569 (Fed.Cir. 1987). See also *Microsoft Corp. v. i4i Limited Partnership*, 131 S.Ct. 1843 (2011). The defense as contended here is one for fraud, and as fully briefed to the Court on the first fraud claims, there is no Rule 9 pleading with particularity that raises a fraud claim in this case.

So, either the claim is one under §102(e) regarding inventorship, which was not pleaded in the answer, or it is a claim that Mr. Junker failed to identify a co-inventor, which is another fraud claim. Either way, these claims should be disposed of on summary judgment.

//

//

//

---

[14] Plaintiff may separately move to strike both Eddings' and Gillespie's testimony for discovery misconduct whereby Defense counsel acted as third party witness's attorney, and obstructed their cross examination with instructions not to answer. Further, defenses counsel was in a conflict position in preparation of these witnesses in disclosing defense strategy during their preparation.

## IX.    CONCLUSION

Defendants cannot prove a single defense with evidence of a quality that would satisfy the clear and convincing standard.  Based on their own testimony and documents, infringement and damages are undisputed.  The court should grant Plaintiff's Motion for Summary Judgment.

Plaintiff requests oral argument on this motion.

Dated:  January 30, 2015

Respectfully submitted,

/s/ James D. Petruzzi
appearing *pro hac vice*
James D. Petruzzi
Texas Bar No. 15853280
MASON & PETRUZZI
4900 Woodway, Suite 745
Houston, Texas  77056
Tel.:  (713) 840-9993
Fax:  (713) 877-9100
JPetruzzi@MasonPetruzzi.com

Co-counsel

Alan S. Gold, Esq.
Gold and Ferrante, P.C.
261 Old York Road, Suite 526
Jenkintown, PA 19046
Tel.:  (215) 885-1118
Fax:  (215) 885-5283
asg@goldferrantelaw.com

Robert M. Mason
appearing *pro hac vice*
MASON & PETRUZZI
3809 Park Place
Addison, Texas  75001
Tel.:  (214) 457-3690
Fax:  (713) 877-9100
RMason@MasonPetruzzi.com

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on this day, January 30, 2015, I caused a copy of the foregoing **PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT ON INVALIDITY, INFRINGEMENT AND** COMPLAINT to be electronically filed with the Clerk of the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system, which will send notice of such filing to all counsel of record.

<u>/s/ James D. Petruzzi</u>
James D. Petruzzi
