IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARRY G. JUNKER,** | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 13-4606 |
| | : | |
| **MEDICAL COMPONENTS, INC.,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

Goldberg, J.                                                                                    December 21, 2016

## MEMORANDUM OPINION

Plaintiff, Larry Junker, has filed a one-count complaint for design patent infringement against Defendants, Medical Components, Inc. and Martech Medical Products, Inc. (collectively, "MedComp"). Plaintiff alleges that Defendants have violated 35 U.S.C. § 271, *et seq.* by selling medical devices embodying Plaintiff's patented invention registered with the United States Patent and Trademark Office ("PTO"). Defendants raise various affirmative defenses in their Third Amended Answer, and have included two counterclaims for invalidity (Count I) and non-infringement (Count II).

Before me is Plaintiff's motion to dismiss Defendants' third, ninth, and tenth affirmative defenses, as well as Defendants' first counterclaim for invalidity. For the reasons that follow, Plaintiff's motion will be granted in part and denied in part.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff is the owner of U.S. Design Patent No. D450,839, entitled "Handle for Introducer Sheath" (the "D'839 patent"). Plaintiff applied for this patent on February 7, 2000, and the PTO issued the patent on November 20, 2001. Plaintiff applied for reissuance of the D'839 patent on July 20, 2003. The PTO eventually re-examined the D'839 patent, and reissued the patent to Plaintiff in 2008. (Defs.' 3d Am. Answer, pp. 4–5.)

While not dispositive to the motion before me, the circumstances surrounding Plaintiff initially obtaining the D'839 patent were the subject of a prior lawsuit in the Northern District of Texas, which reached the United States Court of Appeals for the Federal Circuit. See Junker v. Eddings, 2004 WL 5552032 (N.D. Tex. Jan. 16, 2004); Junker v. Eddings, et al., 396 F.3d 1359 (Fed. Cir. 2005). In that case, Plaintiff sued Galt Medical Corp. ("Galt"); its President, James Eddings ("Eddings"); and, Xentek Medical, Inc ("Xentek") alleging, *inter alia*, design patent infringement. The jury found that the D'839 patent was valid and willfully infringed by Galt, and further found an absence of clear and convincing evidence to suggest that Junker was not the first inventor of the design described in the D'839 patent. The Federal Circuit Court of Appeals affirmed the jury's verdict and the district court's denial of Galt's motion for judgment as a matter of law. Junker, 396 F.3d at 1365.

Plaintiff filed the instant lawsuit on August 8, 2013. On February 26, 2015, toward the end of discovery, Defendants filed a motion for leave to file a Third Amended Answer based on newly discovered evidence. Defendants explained that evidence produced late in discovery

---

[1] I will not consider any exhibits or outside information that would convert Plaintiff's motion to dismiss into one for summary judgment. See Fed. R. Civ. P. 12(d). Therefore, unless otherwise noted, the following facts are derived from Defendants' Third Amended Answer and Counterclaims. See PPG Indus., Inc. v. Generon IGS, Inc., 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011) ("Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint…. [Thus], this Court must accept as true all of the allegations in the [Defendants' counterclaims] and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the [Defendants].") (citations omitted).

contradicted Plaintiff's assertion that he was the "sole inventor" of the D'839 patent, thus raising issues that the patent was procured through fraud and/or inequitable conduct. Defendants sought leave to include these allegations in a Third Amended Answer by way of both affirmative defenses and an amended counterclaim for invalidity. (Defs.' Mot. for Leave at 2, Ex. A.)

On May 20, 2015, the Honorable L. Felipe Restrepo granted in part Defendants' motion to amend. Judge Restrepo allowed Defendants to file a Third Amended Answer, which included a ninth affirmative defense of inequitable conduct, and a tenth affirmative defense of fraud. (See Doc. No. 137 ¶ 1(a) n.2.) Judge Restrepo also permitted Defendants to amend their first counterclaim for invalidity, but *only* to the extent that Defendants sought to incorporate allegations of fraud and inequitable conduct. Judge Restrepo expressly disallowed the inclusion of any other allegations not pertaining to fraud or inequitable conduct.[2] (Id. at ¶ 1(b) n.3.)

Judge Restrepo's Order acknowledged that Plaintiff maintained the right to challenge the legal sufficiency of Defendants' newly-added allegations. (Id. at ¶ 1(e)). On June 15, 2015, Plaintiff did just that—moving under Federal Rules of Civil Procedure 9 and 12 to dismiss Defendants' third, ninth, and tenth affirmative defenses, and first counterclaim for invalidity. (Pl.'s Mot. to Dismiss 1). Plaintiff further requests dismissal of multiple footnotes added to Defendants' Third Amended Answer, which were not included in their proposed Third Amended Answer attached to their motion for leave.

## II. LEGAL STANDARDS

Plaintiff does not specify which subsection of Rule 12 entitles him to dismissal of Defendants' affirmative defenses and first counterclaim. He asserts that the "only plausible inference" that can be derived from Defendants' allegations does not support a claim for either

---

[2] For example, Judge Restrepo pointed out that Defendants sought to include allegations that Plaintiff had admitted previously that certain elements of the invention were functional. (Doc. No. 137 ¶ 1(b) n.3.)

fraud or inequitable conduct. (Pl.'s Mot. to Dismiss 13). This phrasing suggests that he seeks relief under Federal Rule of Civil Procedure 12(b)(6)—failure to state a claim upon which relief can be granted. Nevertheless, with respect to their affirmative defenses, Defendants construe Plaintiff's filing as a motion to strike under Rule 12(f). (Defs.' Resp. 4.)

### A. *Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)*

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. While plausibility "does not impose a probability requirement at the pleading stage," it does require "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of a claim. Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps: (1) the Court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). In evaluating a motion to dismiss, courts generally consider only the allegations contained in the counterclaim, the exhibits attached thereto, matters of public record, and any "undisputedly authentic document" that a party attaches as an exhibit, so long as the allegations in that counterclaim are based on that document.

4

Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

Additionally, Federal Rule of Civil Procedure 9(b) mandates that a party plead "with particularity the circumstances constituting fraud." Iqbal, 556 U.S. at 686 (citing Fed. R. Civ. P. 9(b)). To satisfy this heightened pleading standard, a party must plead or allege the date, time, and place of the alleged fraud, or otherwise "inject precision or some measure of substantiation" into the allegations. Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); see also In re BP Lubricants USA Inc., 637 F.3d 1307, 1311 (Fed. Cir. 2011) ("[A] pleading that simply avers the substantive elements of a claim sounding in fraud … without setting forth the particularized factual bases for the allegations, does not satisfy Rule 9(b).").

### B. *Motion to Strike under Fed. R. Civ. P. 12(f)*

Federal Rule of Civil Procedure 12(f) "provides the means to challenge the sufficiency of affirmative defenses." Mars Inc. v. JCM Am. Corp., 2006 WL 1704469, at *3 (D.N.J. Jun. 14, 2006). Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may act "on its own[,]" or "on motion made by a party[.]" Id. As such, although Plaintiff has moved to "dismiss" Defendants' affirmative defenses, I will construe his motion as it relates to Defendants' affirmative defenses as a motion to strike under Rule 12(f).

## III. ANALYSIS

### A. *Interplay between Inequitable Conduct, Affirmative Defenses, and Counterclaims*

The parties devote a substantial portion of their briefs to whether Defendants' affirmative defenses are subject to the same "plausibility" standard of review as their counterclaims. Indeed,

there is a split among the circuit courts regarding whether or not the "plausibility" standard applies to affirmative defenses.[3]

The Federal Circuit Court of Appeals has held that in a patent infringement case, a motion to dismiss is purely a procedural mechanism, and thus the law of the regional circuit should ordinarily control. See K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1282 (Fed. Cir. 2013); McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1355–56 (Fed. Cir. 2007). However, because inequitable conduct is a claim unique to patent law, the Federal Circuit has instructed that the sufficiency of its pleading is subject to the law of the Federal Circuit. Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326 (Fed. Cir. 2009) (citing Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C., 482 F.3d 1347, 1356 (Fed. Cir. 2007)). As such, I will apply the law of the Federal Circuit in evaluating Defendants' counterclaims and affirmative defenses involving inequitable conduct.

The Federal Circuit has stated that "inequitable conduct, while a broader concept than fraud, must be pled with particularity" pursuant to Federal Rule of Civil Procedure 9(b). Exergen Corp., 575 F.3d at 1326 ("[W]e hold that in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.")

---

[3] See Tyco Fire Products LP v. Victaulic Co., 777 F. Supp. 2d 893, 902 (E.D. Pa. 2011) (discussing cases, and acknowledging a split in authority). The United States Court of Appeals for the Third Circuit has yet to expressly weigh in on this issue. See Vazquez v. Triad Media Sols., Inc., 2016 WL 155044, at *2 (D.N.J. Jan. 13, 2016). Nevertheless, multiple district courts within the Third Circuit have concluded that affirmative defenses are *not* evaluated under the "plausibility" pleading requirement, but are rather subject to the "notice pleading" standard. See e.g., Vazquez, 2016 WL 155044, at *2; Tyco Fire Products LP, 777 F. Supp. 2d at 903; Newborn Bros. Co. v. Albion Eng'g Co., 299 F.R.D. 90, 96 (D.N.J. 2014); Mifflinburg Tel., Inc. v. Criswell, 80 F. Supp. 3d 566, 573 (M.D. Pa. 2015); Weed v. Ally Fin. Inc., 2012 WL 2469544, at *4 (E.D. Pa. June 28, 2012). However, as will be discussed *infra*, it is the law of the Federal Circuit that controls my analysis for purposes of Defendants' inequitable conduct claim/defense, and Rule 9(b) dictates that an affirmative defense of fraud must be pled with particularity.

Multiple district courts within this circuit—applying Federal Circuit precedent—have held that affirmative defenses and counterclaims for inequitable conduct "rise or fall together." See e.g., St. Jude Med., Cardiology Div., Inc. v. Volcano Corp., 2014 WL 2622240, at *1 n.1 (D. Del. June 11, 2014) ("Because both an affirmative defense and a counterclaim asserting inequitable conduct must meet the particularity requirements dictated by Rule 9(b), [the defendant's] counterclaim and affirmative defense for inequitable conduct rise or fall together.") (internal citations and quotations omitted); Wyeth Holdings Corp. v. Sandoz, Inc., 2012 WL 749378 at *4 (D. Del. Mar. 1, 2012); Senju Pharm. Co. v. Apotex, Inc., 921 F. Supp. 2d 297, 306-07 (D. Del. 2013).

The same is true for Defendants' fraud allegations. See Tyco Fire Products LP, 777 F. Supp. 2d at 901 n.7 ("[Fraud allegations] are subject to Rule 9(b)'s particularized requirements regardless of whether they are made by way of an affirmative defense or a [counterclaim]."); Senju Pharm. Co., 921 F. Supp. 2d at 306 ("[F]raud is a clear exception to the otherwise broad notice-pleading standards.").

With this legal framework in mind, I now address the legal sufficiency of Defendants' Third Amended Answer.

### B. *Defendants' Third Amended Answer*

#### i. Inequitable Conduct: Ninth Affirmative Defense and First Counterclaim

"A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the [counterclaim] recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." Delano Farms Co. v.

California Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (citing Exergen Corp., 575 F.3d at 1318, 1330).

As such, "the substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." Exergen Corp., 575 F.3d at 1327 n.3. These are independent factors, and deceit cannot be inferred merely from materiality. Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc).

With respect to the first element, "as a general matter, the materiality required to establish inequitable conduct is *but-for* materiality…. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." Therasense, Inc., 649 F.3d at 1291. And to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the "specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Exergen Corp., 575 F.3d at 1328.

Regarding the second element, specific intent, the Federal Circuit has observed that:

> The relevant "conditions of mind" for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO. Although "knowledge" and "intent" may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court *may reasonably infer* that a party acted with the requisite state of mind.

Exergen Corp., 575 F.3d at 1327 (emphasis added).[4] The Federal Circuit has defined a reasonable inference as "one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." Mycone Dental Supply Co. v. Creative Nail Design, Inc., 2013 WL 3216145, at *5 (D.N.J. June 24, 2013) (quoting Exergen Corp., 575 F.3d at 1329 n.5.)[5]

In sum, the inquiry becomes: whether Defendants have alleged sufficient facts (accepted as true) from which I can reasonably infer that Plaintiff knew he was withholding material information from the PTO at the time of his application for the D'839 patent (and at the time of its reissue), and/or whether Plaintiff provided false information to the PTO about the true inventorship. If so, I must also assess whether these factual allegations are independently sufficient to lead a reasonable person to infer that Plaintiff had the specific intent to deceive the PTO, taking into account any objective indications of good faith on the part of Plaintiff. See Mycone Dental Supply Co., 2013 WL 3216145, at *6.

---

[4] Some confusion has arisen regarding the proper requirements for pleading specific intent. As noted, pleadings must allege sufficient underlying facts to *reasonably infer* that a party acted with the specific intent to deceive the PTO. However, in Therasense, the Federal Circuit stated that, "to meet the clear and convincing evidence standard, the specific intent to deceive must be the *single most reasonable inference* able to be drawn from the evidence.… [W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found. 649 F.3d at 1290–91 (internal citations and quotations omitted). Multiple district courts within the Third Circuit have recognized that the language set forth in Therasense reflects an evidentiary standard, whereas Exergen applies to pleadings. See e.g., Bayer Cropscience AG v. Dow Agrosciences LLC, 2012 WL 1253047, at *4 (D. Del. Apr. 12, 2012) ("[T]he Court will examine whether [plaintiff] pled sufficient facts from which a reasonable inference can be drawn that material information was not given to the PTO because it specifically intended to deceive the PTO. The Court will not determine whether this is the single most reasonable inference to be drawn from the … facts."); see also Cot'n Wash, Inc. v. Henkel Corp., 56 F. Supp. 3d 613, 625 (D. Del. 2014) (same). Accordingly, I will rely on Exergen at this stage, and assess whether Defendants have alleged facts sufficient to raise the reasonable inference that Plaintiff acted with the requisite state of mind.

[5] Thus, a court is not free to disregard the patentee's objective indications of candor and good faith when it assesses whether the pleadings create a reasonable inference of specific intent to deceive the PTO. However, at the Rule 12(b)(6) stage, any such objective indications of candor and good faith must derive only from the pleadings and those materials referenced in and/or attached to the pleadings that may be considered on a Rule 12(b)(6) motion. Mycone Dental Supply Co., 2013 WL 3216145, at *5. Plaintiff argues that he specifically disclosed certain documents related to the "first" inventorship issue when pursuing his application for reissue. However, those records are not presently before me, nor are they discussed or attached to Defendants' Third Amended Answer. I will consider such documents, if necessary, at the summary judgment stage.

The essence of Defendants' allegations with respect to Plaintiff's fraud and inequitable conduct is that Plaintiff stole a third party's drawings in 1999, filed those stolen drawings with the PTO as if they were his own, and knowingly deceived the PTO by filing a declaration that he was the sole inventor of the claimed design. Defendants maintain that but for the omission of this material information, and the accompanying deception, the patent would neither have been originally issued nor subsequently reissued. (Defs.' 3d Am. Answer, pp. 4–6.)

More specifically, Defendants claim that Plaintiff requested certain drawings from Richard Gillespie in 1999 to assist with Plaintiff's sales and marketing efforts—with the understanding that these drawings were confidential and the exclusive property of Xentek Medical, Inc. Defendants allege that Plaintiff took those drawings and filed them, as if he had created them, with his patent application submitted to the PTO on February 7, 2000. Defendants maintain that Plaintiff used the drawings to obtain the patent without Gillespie, Eddings, or Xentek's permission, and that Plaintiff ultimately obtained the D'839 patent as a result of this alleged plagiarism. Defendants highlight that Plaintiff submitted a signed declaration to the PTO which stated, "I believe I am the original, first and *sole* inventor of the subject matter which is claimed and for which a design patent is sought on the above entitled invention." (Defs.' 3d Am. Answer, pp. 4–6.) (emphasis added.)

Defendants contend that Plaintiff further perpetuated his misconduct by filing a second certification with the reissue application in which he again certified: "I believe I am the original, first and *sole* inventor of the subject matter which is described and claimed in the above identified United States design patent and in the foregoing specification and for which invention I solicit a Reissue patent." (Id. at 5) (emphasis added).

10

Plaintiff argues in his motion to dismiss that Defendants' ninth affirmative defense and first counterclaim do not adequately plead inequitable conduct because they fail to allege the "high degree of materiality and intent required to support an inequitable conduct claim." (Pl.'s Mot. to Dismiss at 4.) Plaintiff asserts that merely because Defendants claim other inventors (i.e., Eddings and Gillespie) contributed prior art features to the final design, nowhere do Defendants allege that Plaintiff was aware of these contributions, thought they were relevant to patentability, and that Plaintiff specifically intended to defraud the PTO. (Id. at 5–6.)

In their response in opposition to Plaintiff's motion to dismiss, Defendants argue that:

> [I]t is quite clear who [Junker], what [plagiarized drawings], when [at the time of filing of the patent application and the reissue application], where [at the USPTO] and how [submitting a sworn declaration that he was the sole inventor of the drawings he submitted]." [Hence,] the material omission of inventorship was made to the [PTO], and the Court can reasonably infer [Plaintiff] knew he was not the sole inventor and willfully withheld this information to deceive the [PTO] into granting the D'839 patent[.]

(Defs.' Resp. at 13) (brackets in original).

The Federal Circuit has held that "when named inventors deliberately conceal a true inventor's involvement, the applicants have committed inequitable conduct and the patent is unenforceable[.]" Advanced Magnetic Closures, Inc. v. Rome Fastener Corp., 607 F.3d 817, 828 (Fed. Cir. 2010) (citing Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd., 292 F.3d 1363, 1376 (Fed. Cir. 2002)); PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315, 1321 (Fed. Cir. 2000) ("As a critical requirement for obtaining a patent, inventorship is material."); Intermec Techs. Corp. v. Palm Inc., 738 F. Supp. 2d 522, 560 (D. Del. 2010), aff'd, 466 F. App'x 881 (Fed. Cir. 2012) ("The duty of candor, good faith, and honesty includes the duty to submit truthful information and the duty to disclose to the PTO information known to the patent applicants … which is material to the examination of the patent application.").

In reviewing Defendants' allegations, and assuming their veracity, as I am required to do at this stage, I conclude that Defendants have adequately pled inequitable conduct. Plaintiff's plagiarizing another's drawings, filing them as his own, and submitting a sworn certification to the PTO indicating the same, plausibly suggests that he provided materially false information to the PTO (i.e., he was not the sole inventor, and there were in actuality other inventors). Additionally, based on the facts alleged, it is reasonable to infer that he did so with the specific intent to deceive the PTO. Accordingly, Plaintiff's motion will be denied as to Defendants' ninth affirmative defense and first counterclaim premised on inequitable conduct.

      ii.      <u>Fraud: Tenth Affirmative Defense and First Counterclaim</u>

"Applied to patent prosecution, fraud requires (1) a false representation or deliberate omission of a fact material to patentability, (2) made with the intent to deceive the patent examiner, (3) on which the examiner justifiably relied in granting the patent, and (4) but for which misrepresentation or deliberate omission the patent would not have been granted." <u>C.R. Bard, Inc. v. M3 Sys., Inc.</u>, 157 F.3d 1340, 1364 (Fed. Cir. 1998).

Plaintiff points out in his motion to dismiss that Defendants' tenth affirmative defense for fraud is "subject to the same standards of inequitable conduct[.]" (Pl.'s Mot. to Dismiss at 12.) I have previously ruled that "… the language of <u>Therasense</u> describing inequitable conduct amounts to fraud." <u>F.T.C. v. Cephalon, Inc.</u>, 36 F. Supp. 3d 527, 533 (E.D. Pa. 2014). As such, my discussion above with respect to inequitable conduct applies with equal force to Defendants' fraud defense, which is rooted in the same alleged misconduct. Therefore, Plaintiff's motion will be denied insofar as it seeks dismissal of Defendants' tenth affirmative defense and first amended counterclaim for failure to adequately plead fraud in obtaining the D'839 patent.

      iii.      <u>Other Allegations within Defendants' First Amended Counterclaim</u>

Plaintiff further argues that Paragraphs 8, 9, and 10 of Defendants' first amended counterclaim attempt to include general statutory invalidity arguments, and that Judge Restrepo did not grant leave to file these allegations. However, Paragraphs 8 and 9 state—verbatim—what was included in Defendants' previous Answer. (<u>See</u> Doc. No. 11.) In other words, these paragraphs have not been amended, and Plaintiff does not appear to have previously challenged the legal sufficiency of these paragraphs. Thus, I will deny Plaintiff's motion to strike and/or dismiss these two paragraphs—with one exception.

Despite Judge Restrepo's unambiguous ruling that Defendants were only permitted to incorporate allegations of fraud and/or inequitable conduct into their Third Amended Answer, Defendants included an additional footnote within Paragraph 8 that relates to Plaintiff's patent being invalid due to an "on sale" bar. (3d Am. Answer ¶ 8 n.3.) Defendants never sought leave to add this footnote, and Judge Restrepo did not grant them leave to incorporate this footnote. To the contrary, he expressly forbade it. Accordingly, this footnote will be stricken.

Plaintiff further asks that the first bulleted sub-paragraph within Paragraph 10 be stricken because it includes "incorrect inventorship" invalidity allegations that were not contemplated by Judge Restrepo's Order granting leave to file a Third Amended Answer. I agree with Plaintiff that this paragraph does not pertain to fraud or inequitable conduct. As such, this sub-paragraph will be stricken. However, the second and third bulleted paragraphs within Paragraph 10 will not be stricken because they pertain to inequitable conduct and fraud, and Judge Restrepo granted Defendants leave to include these allegations.

  iv.  Defendants' Third Affirmative Defense

Plaintiff correctly points out that Defendants added a footnote to their current third affirmative defense, which was not included in their proposed Third Amended Answer attached to their motion for leave. (See Doc. No. 119-A; Defs.' 3d Am. Answer, n.1.) As noted, in granting Defendants' motion for leave, Judge Restrepo expressly disallowed those portions of Defendants' proposed Third Amended Answer that did not pertain to fraud or inequitable conduct. This footnote does not pertain to fraud or inequitable conduct, and thus I agree with Plaintiff that the addition of this footnote contradicts Judge Restrepo's May 20, 2015 Order.

  v.  Defendants' Second Amended Counterclaim: Non-Infringement

Plaintiff correctly points out that "one cannot infringe an invalid patent." (Pl.'s Mot. to Dismiss at 18.) To the extent Defendants allege in Paragraph 14 of their second amended counterclaim that they have not infringed the D'839 patent because it is invalid due to Plaintiff's fraud and/or inequitable conduct, this paragraph will be stricken because it is redundant of those allegations already set forth in the ninth and tenth affirmative defenses, and first amended counterclaim for invalidity. See Fed. R. Civ. P. 12(f).

**IV.** **CONCLUSION**

Plaintiff's motion to dismiss will be granted in part and denied in part. The motion will be granted such that: footnote "1" within Defendants' Third Affirmative Defense will be stricken; footnote "3" within Defendants' First Amended Counterclaim will be stricken; the first bulleted sub-paragraph within Paragraph 10 of Defendants' First Amended Counterclaim will be stricken; and, the allegations pertaining to fraud and/or inequitable conduct in Paragraph 14 of Defendants' Second Amended Counterclaim will be stricken. The Motion will be denied in all other respects.

An appropriate Order follows.[6]

---

[6] I have great appreciation for the complexities of patent litigation. That said, I note that the thoughts of The Honorable Richard Linn might be applicable here:

> It is evident … that counsel [have] sought to zealously represent their clients' interests [in] this case. However, at times, counsel's actions [have shown] an excessive emphasis on their roles as zealous advocates. Counsel must remember that they are not only advocates for their clients; they are also officers of the court and are expected to assist the court in the administration of justice, particularly in difficult cases involving complex issues of law and technology…. [At times], counsel appear to have sought to cloud rather than clarify the central legal issues and to draw the court's attention to peripheral matters. Counsel's overlooking of their respective roles as officers of the court has contributed, at least in part, to these protracted proceedings.

Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1356 (Fed. Cir. 2002). After this case was reassigned to my docket, it took a substantial amount of time to become familiar with the issues involved, in part because of the significant number of filings. As we proceed with the remaining adjudication of this case, counsel are asked to keep the above principles in mind.