# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARRY G. JUNKER** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | **No. 13-4606** |
| | : | |
| **MEDICAL COMPONENTS, INC.,** *et al.* | : | |
| | : | |
| *Defendants.* | : | |

**Goldberg, J.**                                                                                    **October 30, 2017**

## MEMORANDUM OPINION

This case involves a design patent infringement dispute. Plaintiff, Larry Junker, is the owner of U.S. Design Patent No. D450,839, entitled "Handle for Introducer Sheath" (the "D'839 Patent"). He has filed a one-count complaint for design patent infringement against Defendants, Medical Components, Inc. and Martech Medical Products, Inc. (collectively, "MedComp") alleging that Defendants have violated 35 U.S.C. § 271, *et seq.* by selling medical devices embodying Plaintiff's patented design. Defendants responded with counterclaims for invalidity and non-infringement. Presently before me are the parties' briefs on claim construction of the D'839 Patent's single claim.

## I.      FACTUAL & PROCEDURAL BACKGROUND

The facts of this case were previously detailed in my December 16, 2016, Memorandum Opinion granting in part and denying in part Plaintiff's motion to dismiss various portions of Defendants' third amended answer. See Junker v. Med. Components, Inc., 2016 WL 7427767 (E.D. Pa. Dec. 21, 2016).

Following my ruling on Plaintiff's motion to dismiss, I set a briefing schedule for the parties to submit their proposed claim constructions of the D'839 Patent. Defendants spend the

majority of their briefs arguing that the D'839 Patent is invalid because it is indefinite, and insist that this issue should be decided at the claim construction stage. Defendants have also filed a *Daubert* motion seeking to exclude one of Plaintiff's expert declarations that was attached to Plaintiff's claim construction brief. On May 9, 2017, I held a hearing and heard argument on the parties' proposed claim constructions.

## II. PROPRIETY OF DECIDING INDEFINITENESS AT THE CLAIM CONSTRUCTION STAGE

As a threshold issue, Defendants—relying on the expert report of one of their experts, Richard Meyst—first argue that the D'839 Patent is invalid because it is indefinite under 35 U.S.C. § 112(b). They insist that this issue is appropriate to decide at the claim construction stage, and highlight several purported inconsistencies in the figures included within the D'839 Patent. Specifically, Defendants aver that one skilled in the art would be unable to ascertain with reasonable certainty: how many "ribs" are supposed to be on the top of the "Mickey-Mouse-ear-shaped" handles (5 or 6); the degree to which the Mickey-Mouse-ear-shaped handles are to be "upswept" in appearance (62 degrees versus 38 degrees); whether one or two "steps" are to be included at the base of the hub of the design; and, whether the Mickey-Mouse-ear-shaped handles are to include a "scallop" on their top surface (or, whether they are not to have such a feature). Defendants contend that these inconsistencies render the single claim of the D'839 Patent indefinite, and thus invalid as a matter of law. (Defs.' Br. 6–12; Doc. No. 184-2, Exhibit 1 ¶¶ 101–106.)

Plaintiff responds that these purported discrepancies are not germane to the overall ornamental design of the patent, and that "[e]ven if minor discrepancies exist among the figures [of the D'839 Patent], this is not a valid basis for ruling the claim indefinite." (Pl.'s Reply 7–8.) In any event, Plaintiff asserts that Defendants' argument regarding the degree to which the

handle ears are to be upswept in appearance (38 versus 62 degrees) lacks merit because the figures identified by Defendants in support of this argument are viewed from different perspectives of the claimed design. Plaintiff further maintains that the alleged "scallop" feature identified by Defendants is a "feature of their own imagination," and not one that is actually present in the claimed design. (Id. at 7.) At a minimum, Plaintiff asks that the indefiniteness issue be decided at the summary judgment stage, given that Defendants have not formally moved for an invalidity ruling, and because my Scheduling Order directed the parties to brief claim construction.

"Indefiniteness is a question of law." CSB-Sys. Int'l Inc. v. SAP Am., Inc., 2011 WL 3240838, at *16 (E.D. Pa. July 28, 2011). "[A] patent claim is presumed valid . . . and therefore, indefiniteness must be shown by clear and convincing evidence." Sandvik Intellectual Prop. AB v. Kennametal, Inc., 2012 WL 3027983, at *9 (W.D. Pa. Feb. 16, 2012).

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Tinnus Enterprises, LLC v. Telebrands Corp., 846 F.3d 1190, 1205 (Fed. Cir. 2017) (quoting Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014)). Following the Supreme Court's decision in Nautilus, very few district courts have attempted to address the issue of invalidity based on indefiniteness in the design patent context. But one court that did explained that "a design patent is invalid for indefiniteness if the errors and inconsistencies in the patent drawings are of such magnitude that the drawings, taken as a whole, fail to inform, with reasonable certainty, those skilled in the art about the overall appearance of the design." Deckers Outdoor Corp. v. Romeo & Juliette, Inc., 2016 WL 7017219, at *4 (C.D. Cal. Dec. 1, 2016).

Whether to decide the issue of invalidity based on indefiniteness at the claim construction stage depends on the particular circumstances and claims at issue in a given case, and is a matter within a court's discretion. But district courts throughout the country have generally been reluctant to consider whether a patent is indefinite at the claim construction phase, rather than at the summary judgment phase. See e.g., Indus. Tech. Research Inst. v. LG Elecs. Inc., 2014 WL 6907449, at *2 (S.D. Cal. Dec. 8, 2014) (deferring "determination of indefiniteness to a later stage of the proceedings so the parties may thoroughly brief the Court on the matter."); CSB-Sys. Int'l Inc., 2011 WL 3240838, at *17 ("Several well-settled principles [including the dispositive nature of an indefiniteness finding] . . . tend to discourage rulings on indefiniteness at the Markman stage.").[1]

In reviewing the parties' arguments, and based on the particular circumstances of this case, I will defer ruling on indefiniteness until the summary judgment stage. Multiple reasons support this decision.

First, Plaintiff has—in accordance with my January 30, 2017, Scheduling Order— focused his arguments on construction of the D'839 Patent's single claim. Given the potentially dispositive nature of an invalidity ruling, that decision is better left for when Plaintiff has had a full opportunity to thoroughly brief and argue this issue. See Indus. Tech. Research Inst., 2014 WL 6907449, at *2; CSB-Sys. Int'l Inc., 2011 WL 3240838, at *17. Moreover, as Plaintiff correctly points out, Defendants have not formally moved for an invalidity ruling.[2]

---

[1] But see Eclectic Prod., Inc. v. Painters Prod., Inc., 2015 WL 930045 (D. Or. Mar. 2, 2015) (holding a design patent invalid at the claim construction stage based on indefiniteness, and noting that while "[c]laim construction generally resolves disputes over the meaning of the patent, . . . in some cases, the patent is so lacking in clarity as to be invalid as indefinite." (internal quotation marks omitted)).

[2] See Pharmastem Therapeutics, Inc. v. Viacell, Inc., 2003 WL 124149, at *1 n.1 (D. Del. Jan. 13, 2003) (declining to hold patent invalid for indefiniteness at the claim construction phase and noting that "defendants ha[d] not . . . filed a motion seeking to invalidate the patents on indefiniteness grounds," but

Second, Defendants' indefiniteness arguments rest on a collection of purported inconsistencies in the figures of the D'839 Patent—some of which Plaintiff disputes the very existence of. At least one court—when faced with an argument at the claim construction phase that a patent was indefinite due to alleged inconsistencies in the patent figures—has held that such alleged inconsistencies do not meet a patent challenger's burden of proving indefiniteness by clear and convincing evidence. See Deckers Outdoor Corp., 2016 WL 7017219, at *4 ("[T]he Court is not 'clearly' convinced that these discrepancies are of such magnitude that a boot designer and manufacturer could not determine with reasonable certainty the overall appearance of the boot.") (citations omitted). The Deckers Outdoor case is consistent with other decisions, including one by the Federal Circuit, which have held that inconsistencies in patent figures do not necessarily render a patent indefinite. See Antonious v. Spalding & Evenflo Cos., Inc., 217 F.3d 849 (Fed. Cir. 1999) (unpublished) ("We conclude that a person of skill in the art would primarily look to Figures 2 and 3 to determine the shape of the weight bar, and any associated discrepancies in Figure 4 would not be sufficient to preclude such a person from gaining an overall understanding of the total substance of the designs. . . . Consequently, we hold that [the defendant] could not have shown by clear and convincing evidence that the '056 and '308 patents were invalid for indefiniteness."); Chih-Wen Chung v. Bed Bath & Beyond, Inc., 2011 WL 6967991, at *5 n.50 (W.D. Tex. Dec. 20, 2011) (collecting cases on the impact of discrepancies and "obvious clerical error[s]" in patent figures, and noting that courts have often declined to give effect to the erroneous aspect(s) of patent figures).

The above precedent further cuts against a ruling on invalidity at the claim construction stage where, as here, the patent challenger's argument for invalidity is based on alleged

had merely "assert[ed] their arguments [on indefiniteness] in their opposition claim construction brief.") (citations omitted).

inconsistencies in the patent figures.[3] Accordingly, I will decline, at this time, to determine whether the D'839 Patent is invalid for indefiniteness and will proceed with construing the D'839 Patent's single claim.

### III. CLAIM CONSTRUCTION OF THE D'839 PATENT

"Determining whether a design patent is infringed is a two-step process. First, the court must construe the design patent's claim." Saverglass, Inc. v. Vitro Packaging, LLC, 130 F. Supp. 3d 747, 751 (E.D.N.Y. 2015). The second step requires a fact finder to compare the patented and accused designs to determine whether the accused design is substantially similar in appearance to the patented design. Id. at 751. At issue in this opinion is the first step—construction of the D'839 Patent's single claim.[4]

#### A. *Legal Standard: Claim Construction of Design Patents*

The Federal Circuit has repeatedly instructed that "[w]ords cannot easily describe ornamental designs." Sport Dimension, Inc. v. Coleman Co., 820 F.3d 1316, 1320 (Fed. Cir. 2016). As such, the court has "cautioned . . . trial courts about excessive reliance on a detailed verbal description in a design infringement case." Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1302 (Fed. Cir. 2010). "A design patent's claim is thus often better represented by illustrations than a written claim construction . . . [because] detailed verbal claim constructions

---

[3] Defendants also argue that the D'839 Patent claims an entire introducer, not just the handles, and that the title of the D'839 Patent—Handle for Introducer Sheath—further supports a finding of indefiniteness. (Def.'s Br. 14–15.) Once again, Defendants may raise this argument in a motion for summary judgment.

[4] As discussed in my December 16, 2016, Opinion disposing of Plaintiff's Motion to Dismiss, the D'839 Patent was the subject of a prior lawsuit in the Northern District of Texas, which was appealed to the United States Court of Appeals for the Federal Circuit. See Junker v. Eddings, 2004 WL 5552032 (N.D. Tex. Jan. 16, 2004), aff'd in part, vacated in part on other grounds 396 F.3d 1359 (Fed. Cir. 2005). In that case, Plaintiff sued Galt Medical Corporation ("Galt") alleging, inter alia, design patent infringement. The jury found that the D'839 patent was valid and willfully infringed by Galt, and the Federal Circuit affirmed the decision. Junker, 396 F.3d at 1365. In its decision, the Federal Circuit pointed out that "[t]he claim of the D'839 [P]atent was never judicially construed [during the litigation], and Galt never requested that such a construction be done." Junker, 396 F.3d at 1361. Accordingly, despite previous litigation surrounding the D'839 Patent, I am unaware of any prior construction of the claim at issue.

increase the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." Sport Dimension, Inc., 820 F.3d at 1320 (internal quotations and citations omitted); see also Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) ("Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."); Crocs, Inc., 598 F.3d at 1302–03 ("Design patents are typically claimed as shown in drawings, and claim construction must [therefore] be adapted to a pictorial setting.").

**B.** *Analysis: Claim Construction of the D'839 Patent*

The single claim of the D'839 Patent, which is entitled "Handle for Introducer Sheath," states: "The ornamental design for a handle for introducer sheath, as shown and described." (Pl.'s Br., Ex. 1.)

Plaintiff proposes a succinct claim construction:

> The D'839 Patent claims the ornamental design for a handle for introducer sheath, as shown in Figures 1 through 9, having two rounded ear opposing shapes with an upswept appearance. The broken lines in the D'839 Patent constitute unclaimed subject matter.

(Pl.'s Br. 3, 8.)

Defendants propose a more detailed written claim construction:

> The introducer sheath of the claim includes the ornamental appearance of all of the elements shown in solid line in Figures 1-9 of the D'839 Patent. These features include:
>
> (1) Two rounded ear opposing wings that each includes (a) a scallop defined in the top surface near the tip of each wing as shown in Figures 1-2, 5, and 9, (b) a number of ribs on their top as shown in Figures 1-6 and 8-9, and (c) a number of ribs on their bottom as shown in Figures 3-4 and 6-8;

(2) A conically tapered central hub as shown in Figures 1-9 that have V-shaped notches located between the opposed wings as shown in Figures 1-8; and

(3) A flat extended portion having a rectangular insert on the bottom of the design between the opposed wings and aligned with the central hub as shown in Figures 1-4 and 6-8.

The sheath shown in broken lines in Figures 1-4 constitute unclaimed subject matter and are not part of the claimed design.

(Defs.' Br. 24.)

In addition to the parties' competing proposed claim constructions, which emphasize different features, they dispute whether or not certain elements, such as the "hub", should be considered part of the overall claimed design, and if so, whether the hub is non-protectable because it is purely functional.

### 1. Does the "Hub" Constitute Part of the Claimed Design?

In support of his proposed claim construction, Plaintiff insists that he "depicted the overall item and its design feature, namely the two rounded ear opposing wings with an upswept appearance, as well as *functional, non-protectable* features, such as the central hole and hub to which the ear wings are attached." (Pl.'s Br. 7; Pl.'s Reply 10) (emphasis added). Thus, Plaintiff's position appears to be that the protectable ornamental design only encompasses the rounded Mickey-Mouse-ear-shaped "wings", with their upswept appearance, but not the "hub" to which the wings are attached, or the conical hole located within the center of the device.

In their Response, Defendants highlight that the "hub" appears in solid lines within the figures of the D'839 Patent. Thus, they insist that the "hub" is actually part of the overall claimed design, and has direct significance to the design's overall ornamental appearance. (Defs.' Br. 15, 18-23) (citing Contessa Food Prod., Inc. v. Conagra, Inc., 282 F.3d 1370, 1378 (Fed. Cir. 2002)

("Our precedent makes clear that all of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement. . . . If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design.") (internal citations omitted); see also In re Owens, 710 F.3d 1362, 1367 n.1 (Fed. Cir. 2013) ("[I]t is appropriate to disclaim certain design elements using broken lines, provided the application makes clear what has been claimed.").

In his Reply, Plaintiff states that, while *ornamental* elements must be depicted in broken lines to be considered disclaimed subject matter, *functional* features of a design must be factored out of a claim *regardless* of whether or not they are depicted in broken or solid lines. (Pl.'s Reply 9–10) (citing Mobile Hi-Tech Wheels v. CIA Wheel Grp., 514 F. Supp. 2d 1172, 1185 (C.D. Cal. 2007) ("While *ornamental* features can only be excluded from the claim of the design patent through the use of broken lines, *functional* features must be excluded regardless of whether those features are disclosed through broken lines.") (emphasis in original).

I agree with Defendants that all of the figures within the D'839 Patent clearly depict the hub feature in solid lines. Accordingly, this feature must be considered part of the overall ornamental design *unless* it is purely functional, and thus non-protectable, as Plaintiff asserts.

2. Is the "Hub" Purely Functional, and Thus Non-Protectable?

Design patents "protect the overall ornamentation of a design, not an aggregation of separable elements." Sport Dimension, Inc., 820 F.3d at 1322. The Federal Circuit has recognized that "a design may contain both functional and ornamental elements, even though the scope of a design patent claim must be limited to the ornamental aspects of the design." Sport Dimension, Inc., 820 F.3d at 1320 (internal citations omitted); Deckers Outdoor Corp., 2016 WL

7017219, at *5–6 ("A design patent only protects the novel, ornamental features of the patented design, not the functional aspects of the design.") (internal quotations omitted)

A particular design element or feature of an article of manufacture may be deemed purely "functional" (and therefore must be factored out of a design patent's claim) if its basic design is "dictated" by its functional purpose, or is otherwise "essential to the use of the article." Sport Dimension, Inc., 820 F.3d at 1320; Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1334 (Fed. Cir. 2015). Accordingly, "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." Id. at 1320 (quoting OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997)); Ethicon Endo-Surgery, Inc., 796 F.3d at 1328 ("We have explained . . . that there are a number of claim scope issues which may benefit from verbal or written guidance, among them the distinction between features of the claimed design that are ornamental and those that are purely functional."); Poly-Am., LP. v. API Indus., Inc., 74 F. Supp. 3d 684, 688 (D. Del. 2014) (same).

However—and critically—even where certain features of an article of manufacture serve a functional or utilitarian purpose, the Federal Circuit has reiterated that district courts must still consider whether certain ornamental aspects of otherwise functional elements contribute to a design's overall ornamentation. See e.g., Sport Dimension, Inc., 820 F.3d at 1321 ("In OddzOn, Richardson, and Ethicon, we construed design patent claims so as to assist a finder of fact in distinguishing between functional and ornamental features. But in no case did we entirely eliminate a structural element from the claimed ornamental design, even though that element also served a functional purpose.") (citing OddzOn Prod., Inc. v. Just Toys, Inc., 122 F.3d 1396 (Fed. Cir. 1997); Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293 (Fed. Cir. 2010); Ethicon

Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1334 (Fed. Cir. 2015)). Therefore, district courts must be careful not to eliminate "whole aspects" of a claimed design, even where a design may have "many functional elements" and "minimal ornamentation" that results in an "overall claim scope" that is accordingly narrow. Sport Dimension, Inc., 820 F.3d at 1320–1324.

Here, I conclude that Plaintiff has failed to adequately explain or otherwise establish how or why the hub is purely functional, and thus does not contribute to the overall ornamentation of the design. As noted, the hub appears in solid lines in each of the relevant figures of the D'839 Patent, which means that Plaintiff has not expressly disclaimed this subject matter as part of his design. Additionally, Plaintiff offers no specific utilitarian purpose that the hub serves by the nature of its shape such that it should not be included as part of the overall ornamentation of the design. Put another way, Plaintiff has not demonstrated how or why the design of the hub feature is dictated by its function, or how it serves some type of utilitarian advantage based on its shape to warrant its exclusion from the overall ornamentation of the design.[5]

Furthermore, during the claim construction hearing, Defendants presented evidence of alternative designs for the hub feature at issue. As depicted in the figures of the D'839 Patent, the hub exhibits a tapered, conical shape. Defendants cited to alternative designs depicting hubs without conical or tapered profiles. (See Defs.' Br. 15–18 (citing Figure 1 of U.S. Design Patent No. 378,130; Figure 14 of U.S. Patent No. 6,645,178.)) The Federal Circuit has instructed that the existence of alternative designs can be a critical factor in determining that a particular feature is ornamental as opposed to functional. See Ethicon Endo-Surgery, Inc., 796 F.3d at 1330 ("[A]n

---

[5] In arguing that the design of the hub is dictated by its function, Plaintiff has pointed to Defendants' Rule 30(b)(6) deposition testimony, which Plaintiff characterizes as conceding that certain features (including the hub) are functional. (See Pl.'s Br. 7.) But such testimony is not dispositive on the question of whether or not the design of the hub is dictated by its function, because claim construction is a matter of law for the Court to decide.

inquiry into whether a claimed design is primarily functional should begin with an inquiry into the existence of alternative designs."); Sport Dimension, Inc., 820 F.3d at 1322 ("Although we introduced [the alternative design factor, among others] to assist courts in determining whether [an overall] claimed design was dictated by function and thus invalid, [these factors] may serve as a useful guide for claim construction functionality as well."); see also Am. Beverage Corp. v. Diageo N. Am., Inc., 936 F. Supp. 2d 555, 588 (W.D. Pa. 2013) ("Demonstrating [t]he presence of alternative designs can be a significant factor in finding that claimed elements are not functional.") (internal quotations omitted). This further lends support to Defendants' position that the hub feature contributes to the ornamentation of the overall design claimed, and thus is not purely functional.[6] Accordingly, I will also construe the claim of the D'839 Patent to include the hub.

### 3. The Court's Claim Construction of the D'839 Patent

As reflected by the parties' competing claim constructions, each asks that I emphasize particular features in my written claim construction of the D'839 Patent. I will refrain from highlighting the specific features identified by Plaintiff (i.e., the two rounded ear opposing shapes with an upswept appearance) because doing so could "increase the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." Sport

---

[6] Plaintiff also argues—in passing—that the "conical hole" located inside the hub is functional, and thus non-protectable. Defendants' response argues that the hub (and certain other features) are ornamental, but does not discuss the conical hole in any detail. While the existence of the conical hole appears to serve the utilitarian purpose of facilitating the introduction of a sheath, the fact that Plaintiff himself characterizes the hole as "conical" suggests it may be impacted by (or may impact) the shape of the hub—which I have determined contributes to the overall ornamentation of the design. As such, it stands to reason that—notwithstanding its utilitarian purpose—the precise shape of the hole may also impact or otherwise contribute to the overall ornamentation of the design, particularly in light of the fact that Defendants pointed to alternative designs for the hub feature. For example, the parties have not discussed or pointed to evidence pertaining to whether or not a "conical hole" would exist in a hub that was perfectly cylindrical, and not conical or tapered. In the absence of such evidence, I will construe the claim of the D'839 Patent to include the conical hole.

Dimension, Inc., 820 F.3d at 1320 (internal quotation marks and citations omitted). For similar reasons, as well as those discussed *supra* regarding the Federal Circuit's directive that design patents be construed based on their illustrations, I will refrain from adopting Defendants' proposed construction, which seeks a detailed written claim construction.

In light of the foregoing, the claim of the D'839 Patent will be construed as follows:

> The D'839 Patent claims the ornamental design of a handle for an introducer sheath, as shown in Figures 1–9. The broken lines in the Figures of the D'839 Patent represent unclaimed subject matter.

This construction is in accordance with the most recent claim constructions rendered by federal district courts in the design patent context. See e.g., Deckers Outdoor Corp., 2016 WL 7017219, at *6 ("The ornamental design for a portion of a footwear upper as shown in the figures of the D599,999 Patent (FIGS. 1–7), excluding portions shown in broken lines."); Saverglass, Inc. v. Vitro Packaging, LLC, 130 F. Supp. 3d 747, 753 (E.D.N.Y. 2015) ("The '197 patent is directed to the ornamental design of a bottle as illustrated in FIGS. 1–7. Oblique lines shown on the surfaces of the bottle in FIGS. 1–7 represent shading and contour lines, not surface ornamentation."); Reddy v. Lowe's Companies, Inc., 60 F. Supp. 3d 249, 260 (D. Mass. 2014) ("The ornamental design for a bathroom vanity light shade, as shown and described in Figures 1–5."); P.S. Prod., Inc. v. Activision Blizzard, Inc., 140 F. Supp. 3d 795, 802 (E.D. Ark. 2014) ("[T]he Court construes the '294 patent's claim as the ornamental design for a stun gun as shown and described in figures 1–8 of the '294 patent."); Am. Beverage Corp. v. Diageo N. Am., Inc., 936 F. Supp. 2d 555, 572 (W.D. Pa. 2013) ("The '672 patent claims an ornamental design for a flexible liquid-containing pouch, as shown in Figures 1–8 of Exhibit A.").

## IV.    DEFENDANTS' *DAUBERT* MOTION

Defendants have also filed a *Daubert* motion under Federal Rule of Evidence 702 to exclude the expert declaration of Peter Bressler, which was attached to Plaintiff's opening brief in support of his proposed claim construction. Defendants raise various arguments in support of their request to exclude Mr. Bressler's declaration, including: (1) that Mr. Bressler's opinion is unreliable because he did not consider all of the ornamental features of the D'839 Patent in rendering his opinion; (2) that Mr. Bressler's report is unreliable due to a flawed methodology; and (3) that Mr. Bressler failed to articulate the basis by which he is an expert in the claimed subject matter. (Defs.' Mot. to Strike 1–21.)

Because claim construction is a matter of law "exclusively within the province of the court," Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996), I did not rely on Mr. Bressler's declaration in construing the claim of the D'839 Patent. Accordingly, I will deny Defendants' motion as moot. Should Plaintiff attempt to rely on Mr. Bressler's declaration at a later stage of this litigation, Defendants may re-file their motion.

## V.    CONCLUSION

I will exercise my discretion and defer ruling on the issue of invalidity based on indefiniteness at the claim construction stage. Additionally, the single claim of the D'839 Patent shall be construed as set forth above and in the Claim Construction Order that follows.