IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY G. JUNKER | § | CIVIL ACTION |
| | § | |
| v. | § | |
| | § | |
| MEDICAL COMPONENTS, INC. et al | § | NO. 2:13-CV-04606-MSG |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON INVALIDITY, INFRINGEMENT AND DAMAGES**

To defeat summary judgment Defendants must show their proofs and demonstrate with clear and convincing evidence that they meet their burden on the various issues. It is insufficient to produce *some* evidence. Yet, Defendants put forth no reliable evidence to prove their defenses. Their unsworn expert reports cannot be considered as summary judgment evidence at all. Their damages expert failed to provide a basis to rebut the undisputed evidence of disgorged profits produced by Defendants. And there is no genuine dispute over infringement in the evidentiary record.

Yet Defendants all but declare they do not need to meet their burden: "The entire basis for this portion of his motion consists of no more than a series of conclusory allegations. An award of summary judgment requires much more." Ds. Mem. p. 21. If fact, it does not. Defendants assert that "Plaintiff must demonstrate an absence of any issue of material fact." Ds. Mem. 24. Not so. Once challenged, Defendants have to show their case. It is neither the Court's nor Plaintiff's job to sift through the discovery and exhibits to find a basis for Defendants' defenses. *Anderson* and *Celotex* require more.

### 1. Defendants Cannot Restate Their Own Testimony

Defendants incorrectly seek to recast Schweikert's testimony as being "asked about the design patent in the context of Plaintiff's claim construction position." Ds. Mem. p. 17. This assertion is ridiculous for several reasons. First, there had been no claim construction in this case when the deposition was taken. Second, and more importantly, not a single question referred to the patent claim being limited to Mickey Mouse ears. Rather, Schweikert was asked whether looking at the patent drawings ordinary observers would think the accused products look the same. These were 30(b)(6) depositions of well-prepared senior executives. Defendants know full well that the "ordinary purchaser" for infringement purposes in the context of the instant

case are doctors and nurses, and those were the "purchasing customers" that Defendants' Rule 30(b)(6) witness was referring to when he testified regarding infringement.[1] Defendants' assertion that Mr. Schweikert was answering a different question is unfounded nonsense.

Defendants make a further unsupported argument that FRE 407 somehow limits the use of clear admissions of infringement because of testimony about design changes, citing *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). Ds Mem. p. 18. *London* has nothing to do with Rule 407 or remedial measures and indeed makes the point: "Although designing or inventing around patents to make new inventions is encouraged, piracy is not." *Id.*

The only 'evidence' Defendants put forth regarding their claim of non-infringement is the expert report of Mr. Meyst. However, it is well established law that an unsworn report cannot be relied upon in the context of summary judgment. *Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989). Plaintiff hereby objects to any consideration by the Court of each and every report submitted by Defendants' experts for this motion. In *Fowle*, the Third Circuit affirmed the district court's grant of summary judgment, finding that an unsworn expert report was "not competent to be considered on a motion for summary judgment" because the "report was not attached to an affidavit or deposition of [plaintiff's expert]." *Id*. *See Bock v. CVS Pharm., Inc.*, 2008 U.S. Dist. LEXIS 62254, *8-9 (E.D. Pa. Aug. 13, 2008) (refusing to consider unsworn expert report); *Burrell v. Minn. Mining Mfg. Co.*, 2011 U.S. Dist. LEXIS 111312, 9-10 (E.D. Pa. June 9, 2011) (cannot be corrected after scheduling due dates have passed). Defendants' own admissions and Plaintiff's sworn expert report establish infringement by a preponderance of the evidence, and thus Mr. Junker is entitled to summary judgment.

---

[1] Q. And the purchasing customer we're talking about is a purchasing agent at the customer side? A. No, typically it would be a clinical decision first a doctor or a nurse would make the decision first. Schweikert deposition 176:13-18. *See* JDP Declaration in Support of Reply to Opposition to Daubert and Dkt. 121-2.

Finally, Defendants' reference to Schweikert testimony on page 18 of their brief for the notion that "the MedComp sheaths looked very different for visual differences from the design shown in the '839 Patent" either discusses functional differences (Ds' Exh. A pp. 192-200), notes it is "a little bit different" (*Id*. at 233) or is a reference to *the later re-designed product*, rather than the accused product. *Id*. pp. 199-200, referring to Exhibit 18, also marked as Exh. 21 Dkt. 201-45. And none of this testimony is related to what an ordinary observer would see.

### 2. Defendants Have Not Produced Clear and Convincing Evidence of Invalidity

Defendants seem to assert that they have either "pleaded" the defenses adequately, or that there are "factual disputes" that undercut Plaintiff's motion. But this misses the key point of the motion—that Defendants have the burden of showing clear and convincing evidence. It is not enough to point to factual disputes, if the totality of their evidence cannot meet their burden.

Oddly, Defendants now assert §§ 101, 102(f), and 116 as a basis for invalidity because of incorrect inventorship. Ds. Mem. p. 6. None of these sections are applicable. Section 101 is not discussed in the Opposition, and has to do with subject matter eligibility. Section 116 is not even alleged in the Answer or Counterclaims. Section 102(f) is for derivation and as discussed below, even if in the case, which it is not, has not been proven by clear and convincing evidence. Defendants seemingly have abandoned the other inventorship theories under §102(a-e).

### a. Defendants fail to meet their burden on derivation or prior invention

No jury could find invalidity based on the Gillespie '914 Patent to be clear and convincing[2] in light of the previous affirmations of the patent in litigation and before the Patent Office specifically rejecting the '914 as a §102(e) reference. In their opposition papers,

---

[2] For all the reasons set forth in Plaintiff's motion, collateral estoppel should apply. The same witnesses, on the same issue, with a party motivated to pursue it has already been rejected by a jury. Further, any doubt Defendants here are raising a new issue is dispelled, as the testimony came from Eddings and Gillespie, and that Defense counsel represented them in their depositions. A greater waste of judicial resource can hardly be imagined to relitigate the inventorship and priority of invention, particularly when it has been cut from the pleadings.

Defendants assert Eddings and/or Gillespie first invented or Junker "derived" the invention under §102(f) or (g). Under 35 U.S.C. §102(g)(2), the validity of a patent can be challenged only by providing clear and convincing evidence that "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. §102(g)(2). "An inventor can establish that he or she was the first to invent under §102(g) by demonstrating either that he or she was the first to reduce the invention to practice or that he or she was the first to conceive of the invention and then, prior to the other party's conception, exercised reasonable diligence in reducing the invention to practice." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 2006 U.S. Dist. LEXIS 9353, 110-111 (N.D. Cal. Feb. 24, 2006). Defendants have not set forth such evidence on each element of the defense. Indeed, there is no evidence of conception of an invention by either witness.[3]

### b. Defendants fail to show the patented invention was on sale

To survive summary judgment, Defendants offer the affidavit of Eddings to purportedly claim that all Boston Scientific needed to do was say "I accept" to make a binding contract. However, this is directly contrary to Eddings' deposition testimony, and therefore a sham affidavit that cannot be relied upon in summary judgment.[4] For the reasons set out in Plaintiff's Motion for Summary Judgment, Defendants' challenge under §102(b) has not been established by clear and convincing evidence and summary judgment should be granted.

### c. Defendants fail to show the invention was obvious

---

[3] In their opposition papers Defendants assert invalidity under §102(f) for derivation, but nowhere in the operative answer or counterclaims has this invalidity claim been permitted. The merits of the §102(f) defense is nevertheless discussed *infra*, pp. 7-8.

[4] *Hackman v. Valley Fair*, 932 F.2d 239, 24 (3d Cir. 1991); *Esser v. A.C. & S., Inc.,* 2014 U.S. Dist. LEXIS 148106, 9-10 (E.D. Pa. Mar. 17, 2014). Plaintiff further objects to the Eddings Declaration Dkt. 202-23, paragraph 6, which disagrees with his own deposition testimony. No plausible explanation has been put forward to explain this clear inconsistency. *See* Eddings Depo., pp. 113:24-114:4, 115:23-116:1, Dkt. 201-3. To the extent the Eddings Declaration purports to include any statements from Boston Scientific, Plaintiff further objects on hearsay grounds. Dkt. 202-23, ¶¶ 10, 14. Both contain hearsay of what Boston Scientific "thought" or said.

Defendants argue there are fact disputes on various issues, but never point out how the evidence shows obviousness in a clear and convincing manner. Indeed, they assert "The scope and content of the prior art are disputed, the level of ordinary skill in the art is disputed, and how a person of skill in the art would view the prior art and be motivated to modify the prior art to arrive at the claimed design of the '839 Patent are all in dispute." Ds. Mem p. 12. Yet, no facts supporting these assertions are put forward in the Opposition or the Statement of Facts. All Defendants have done is state *what would have to be proven* to show obviousness, with not a single fact showing they can meet their burden.

Again, Defendants rely on Meyst which is not valid summary judgment evidence. *See* p. 2, *supra*. For an invalidity claim under §103, "[Defendants] must now come forth with clear and convincing evidence showing **a suggestion or motivation** to modify the teachings of the prior art reference in such a way so as to yield the claimed invention[5]." Further, as previously noted, the Patent Office already found the '914 Patent did not render the subject patent obvious. Defendants have not met their clear and convincing burden, have no expert on this topic and summary judgment should be granted in Mr. Junker's favor.

**d. Defendants fail to show the claim is indefinite**

Defendants make the astounding assertion that this is a bench trial and that summary judgment is somehow treated differently on this issue.[6] This is indisputably a jury trial case, as demanded in the original complaint. *See* Dkt 1. Second, Defendants must come forward with clear and convincing proof of indefiniteness to survive summary judgment on this invalidity defense. Defendants claim that Plaintiff did not "address indefiniteness under §112." Ds. Mem. p. 1. It is unclear what this refers to, as the motion clearly put Defendants to their proof on

---

[5] *MEMC Elec. Materials*, 2006 U.S. Dist. LEXIS 9353 at *112 (citing *In re Werner Kotzab*, 217 F.3d 1365, 1370 (Fed. Cir. 2000)) (emphasis added).
[6] Defendants' Opposition to Motion to Exclude Expert, Dkt. 208, p. 1.

section 112 under the applicable standard applied to all invalidity theories. *See* Dkt. 197, Section A, p. 11, referring to defenses under §112.

The only facts that Defendants have set forth on this issue are those set out by Defendants' expert Mr. Meyst. However, that expert report cannot be relied upon for summary judgment under F.R.C.P 56, as it is not evidence that can be considered.[7] As such, Defendants have no evidence. Plaintiff cannot overemphasize—the rules mean something and Defendants have repeatedly disregarded substantive rules of evidence and discovery. Further, as all parties and parties' experts have demonstrated a clear understanding of the patent claim, there is no clear and convincing case for invalidity under §112. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment, pp. 3-9, Dkt. 211.

### e. Defendants fail to show invalidity on inventorship issues

Defendants also assert that the Junker design is unenforceable due to incorrect inventorship. In connection with this claim, Defendants cite 35 U.S.C. §§ 101, 116 and §102(f), none of which are proper statutory bases for finding invalidity as asserted. *See supra*, pp. 3-4. To carry their burden under §102(f), Defendants must show by clear and convincing evidence that another potential inventor conceived something not in the prior art, yet Defendants only assert that Mr. Gillespie contributed upswept handles, a feature admittedly in the prior art. *See* Dkt. 201-39 (SJM0000623) citing Bley (US 5,762,630) and Korisch (US 5,951,526).

> Although [alleged-inventor] claims to have researched and developed a particular extender, [infringer] admits that the basic concept of an extender, which is all that is disclosed in the '748 patent concerning the extender, was in the prior art. Similarly to *Hess*, therefore, Benson cannot be considered a co-inventor of claim 11.

*Nartron Corp. v. Schukra U.S.A., Inc.*, 558 F.3d 1352, 1358 (Fed. Cir. 2009). "A contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution

---

[7] *See* p. 2, *supra*.

to conception." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004). Gillespie "contributed," if anything, a known prior art element of upswept handles.

Further, under §102(f), a person is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." 35 U.S.C. §102(f). This is a claim for derivation. "To prove derivation under §102(f), 'the party asserting invalidity **must prove both prior conception of the invention by another and communication of that conception to the patentee' by clear and convincing evidence**." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003) (emphasis added). "The communication must be sufficient to enable one of ordinary skill in the art to make the patented invention." *Id.* Defendants fail to identify any evidence of a clear and convincing nature on each of the elements of the defense and therefore have not carried their burden under §§102(f), 171 or any other inventorship theory.

Defendants repeating that they have raised material issues of fact that are in dispute as to the affirmative defenses of invalidity does not defeat summary judgment. Simply raising a "fact dispute" is insufficient to meet their burden. Summary judgment will be granted where the non-moving party fails to "establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). And, in this context, Defendants must do so with clear and convincing proof.

Defendants continue to repeat the non-sequitur that Mr. Junker invented only the Mickey Mouse ears. Mr. Junker invented an overall design and a complete invention. *See* Junker Decl. ¶5, Dkt. 199 and D'839. That an item in the final design was in the prior art is of no import. Even if Mr. Junker believed the departure from the prior introducers was his enlarged ears, that does not change the fact that he invented an introducer handle, not disembodied ears.

The issue is whether anyone else has shown by clear and convincing evidence that they conceived of an invention and are an inventor. No such evidence has been produced. By contrast, corroboration by Junker was provided during the previous trial and here in the form of a raft of evidence such as the non-disclosure agreements, the prototype, the fax showing the rounded ear change, and admissions by Gillespie that the drawings used in the patent were not his, but rather were that of the patent draftsman hired by Junker.[8] Dkt. 211, p. 8.

### f. Defendants fail to meet their burden on fraud or inequitable conduct

Defendants' remaining claims for invalidity due to inequitable conduct and fraud are equally unsupported, failing to demonstrate any, much less clear and convincing, evidence of fraud. Indeed, the only allegation of "malfeasance" by Junker is the alleged misuse of drawings. As pointed out in the opening and at fn 8 herein, Gillespie admitted both that he gave the drawings to Junker and that the patent drawings were not his. Junker also gave uncontradicted testimony that he took the information relating to his conception and invention and had his patent attorney and draftsman prepare drawings. Not only is this not evidence of fraud, but fraud is certainly not the "single and most reasonable inference" to be drawn. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.") The only reasonable conclusion is that Junker properly filed a patent in his name, showing his invention.

Finally, there is no evidence of intent to mislead the PTO other than the circular argument Junker allegedly knew there were "other" inventors and did not name them. This is unsupported by any evidence of Junker's intent or state of mind. A bald assertion of intent does not overcome summary judgment. Just the opposite, Junker filed a patent on his invention with drawings that

---

[8] "How did Mr. Junker obtain your drawings? A. He asked for them. And you provided these drawings to Mr. Junker A. Yes, I did." Dkt. 201-4, Gillespie depo., pp. 31:4-13. Second, it is irrelevant who prepared the patent drawings, but even so, there is no evidence it was anyone other than Mr. Junker's patent attorney and draftsmen. "So, you [Gillespie] created these drawings? A. No, I think that the figures, it would appear to me, were –were produced by a –a patent draftsman. I did not personally produce the drawings that are shown on the-- on the patent." Id. at 26; See also Dkt. 199, Junker ¶ 13

reflected his overall design. This shows no intent to mislead the patent office, but rather is entirely consistent with the previous trial outcome and the factual record before this court. There is no evidence Junker believed or should have believed someone else was an inventor.

The argument that the Mickey Mouse ears are the key ornamental feature does nothing to undercut that the overall design was Junker's that also included the prior art features such as ribs, hubs, upturned wings, etc. Indeed, the early prototype created for Mr. Junker before he met Mr. Gillespie had all of these features, other than the rounded ears. Dkt. 201-54; Dkt 199 Junker Decl. ¶ 8. Then, Junker corrected this error, as already established in his fax to Mr. Eddings. Dkt. 201-12. The clear evidence shows that he invented the design, including the rounded ears.

This simply is not a fraud case. A jury should not be allowed to resolve this highly overcharged issue, when the evidence does not clearly point to fraud.

### 3. Defendants Fail to Establish a Clear and Convincing Case On Any of Their Ancillary Defenses

Defendants make the nonsensical attack that Mr. Junker's "motion consists of no more than a series of conclusory allegations. An award of summary judgment requires much more." Ds. Mem. p. 21. Like the other defenses, waiver, estoppel, and unclean hands all require specific proof. Estoppel as a defense has specific requirements, none of which are met here. *Intel Corp. v. Future Link Sys., LLC*, 268 F. Supp. 3d 605 (D. Del. 2017). Further, all of these defenses are directed to equitable claims; in this case there is no claim for injunction. These are just variants of claims of fraud and inequitable conduct which are meritless and are also subject to more stringent requirements of proof not present here.

### 4. Defendants Have Not Rebutted the Undisputed Showing on Damages

Plaintiff is not seeking his lost profits for damages under §289. Ds. Mem. p. 22-23. Plaintiff seeks Defendants' profits on sheath/dilator sales or for profits attributable to the unit in kits. Plaintiff's MSJ, Dkt. 197, pp. 28-31. As for Defendants' profits, Plaintiff has established the profits according to Defendants' documents and deposition testimony. Again, Defendants

cannot rely on the unsworn expert report of Ms. Smith. See p. 2 *supra*. Nor can they change their data without properly supplementing their interrogatory responses.[9] Accordingly, there is no remaining disputed issue of fact regarding Defendants' profits.[10]

As for Defendants' assertion that the date from which damages should begin is the date of suit due to a license that did not require marking, a cursory review of the document shows such a theory is inapplicable.[11] That document was merely a litigation settlement only for prior sales purchased from Galt, not an ongoing license where the licensee would be manufacturing and selling product that even could be marked. Dkt. 111-4. It is not a license to manufacture new product. The products at issue were "particular introducer sheaths that C.R. Bard purchased from Galt Medical Corp. for which sales information was provided during discovery in the Pending Litigation."[12] SJM0001521. In other words, these were units Galt manufactured, already produced and resold by Bard. And, this Settlement was at a time when Galt and Bard were already under a Court Order not to sell further product. *See* Dkt. 201-22, Injunction. Plaintiff is entitled to damages going back six years prior to the date of suit. *See* 35 U.S.C. §286.

**CONCLUSION**

Summary Judgment in favor of Plaintiff should be granted.

Dated: January 24, 2018

Respectfully submitted,
/s/ James D. Petruzzi

Co-counsel  appearing *pro hac vice*
Alan S. Gold, Esq.  James D. Petruzzi
Gold and Ferrante, P.C.  Texas Bar No. 15853280

---

[9] The lengths Defendants go to misrepresent the record can be found in their assertion that the sheath and dilator are sold separately. Dkt. 209, item 56. Each of the cites refers to a unit including both. See, for example, 201-3, p. 31 "in a peelable sheath, the set, the dilator has to lock to the sheath for introduction."

[10] Plaintiff also notes that even if the Smith report were a properly sworn affidavit, it cannot contradict or rely on hearsay statements of Defendants' President, Timothy Schweikert, that contradict his sworn testimony.

[11] No evidence is cited regarding this marking theory other than the unverified Smith expert report which itself is not evidence. Even so, Plaintiff objects to any reference to the Bard Settlement as hearsay, as no one who executed or was involved in the Settlement has testified to its accuracy or authenticity.

[12] Indeed, Plaintiff found out about Bard in connection with the Court order requiring Galt to identify customers and Bard was given specific notice of the Patent and the Injunction in 2004 ordering no further sales, two years before the Bard Settlement. *See* Dkt. 121-5. Defendants were given specific notice of this patent as well. *See* Dkt. 201-22

261 Old York Road, Suite 526  
Jenkintown, PA 19046  
Tel.: (215) 885-1118  
Fax: (215) 885-5283  
asg@goldferrantelaw.com

THE PETRUZZI LAW FIRM  
4900 Woodway, Suite 745  
Houston, Texas 77056  
Tel.: (713) 840-9993  
Fax.: (713) 877-9100

# CERTIFICATE OF SERVICE

      I hereby certify that on this day, January__, 2018, I caused a copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT ON INVALIDITY, INFRINGEMENT AND DAMAGES** to be electronically filed with the Clerk of the United States District Court for the Eastern District of Pennsylvania by using the CM/ECF system, which will send notice of such filing to all counsel of record.

                                                 /s/ James D. Petruzzi
                                                 James D. Petruzzi