IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY G. JUNKER, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 13-4606 |
| MEDICAL COMPONENTS, INC., et al., | |
| Defendants. | |

**Goldberg, J.**                                                                                                **March 19, 2020**

## MEMORANDUM OPINION

Commencing on January 27, 2020, I held a bench trial on Defendants Medical Components, Inc. and Martech Medical Products, Inc.'s alleged infringement of Plaintiff Larry Junker's patent for the handle design of what is referred to as an "introducer sheath." The infringement verdict and my findings on Defendants' claim of invalidity have been held under advisement pending post-trial submissions and resolution of the current discovery dispute.

Permeating the trial process has been Defendants' allegedly delinquent productions of expert reports on damages and corresponding damages theories. Plaintiff has consistently sought exclusion of these late-produced theories. I initially held this issue under advisement. As the trial record is now complete, I set forth my conclusions below regarding this discovery dispute.

    **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff initiated this action on August 8, 2013 for Defendants' alleged infringement of U.S. Design Patent Number D450, 839 (the "D'839 Patent"), entitled "Handle for Introducer Sheath." Plaintiff claims that four of Defendants' introducer sheath products, used in the

1

medical insertion of catheters, infringe the D'839 Patent. Defendants' products are referred to as the Super Sheath, the Super Sheath 2.0, the Super Sheath Valved, and the Super Sheath Valved 2.0 (the "Accused Products"). Defendants assert a counterclaim for invalidity based on the allegation that Plaintiff did not invent the design claimed in the D'839 Patent.

The pertinent facts regarding infringement and invalidity will be set forth in my forthcoming Opinion on the claims and counter-claims. I recite here only those facts relevant to the expert discovery dispute before me—whether Defendants failed to comply with the requirements of Fed. R. Civ. P. 26 by belatedly disclosing a "corrected" report of its expert, Dana Trexler, and supporting documents.

The Honorable L. Felipe Restrepo, who was previously assigned to this case, originally set the close of fact discovery for December 17, 2014 and the close of expert discovery for December 22, 2014. On December 22, 2014, Defendants' damages expert, Dana Trexler, submitted her expert report (the "First Trexler Report"), calculating damages based on theories of disgorged profits and reasonable royalty.[1] The next day, outside of Judge Restrepo's deadline, Trexler produced a "corrected" expert report (the "Second Trexler Report"), which included revised end dates of sale, earlier in time, for the Accused Products.

Plaintiff moved to strike this second report as untimely and prejudicial. On May 20, 2015, Judge Restrepo denied Plaintiff's motion and extended the close of fact and expert discovery by five months (October 16, 2015) to allow for a deposition of Trexler based on her second report. Plaintiff never sought to take this deposition. This matter was then reassigned to me on January 19, 2016.

---

[1] Plaintiff did not pursue a reasonable royalty theory of damages at trial. (N.T., 1/27/20 (a.m.), 24:12-25:1.)

2

On January 15, 2020, twelve days before trial was set to begin, Trexler submitted another "corrected" expert report (the "Third Trexler Report"). This report again purported to correct damages calculations by incorporating revised end dates of sale for the Accused Products. The Third Trexler Report also introduced, for the first time, "Scenario 1D"—a disgorged profits theory of damages based on Defendants' assertion that only the handle of the accused introducer sheaths was the relevant "article of manufacture."

On January 21, 2020, Plaintiff filed a motion seeking to preclude Trexler from testifying as to the contents of the Third Trexler Report in its entirety. I granted that motion in part, excluding those scenarios in the Third Trexler Report that calculated damages based on a theory that the filing date of this lawsuit is the appropriate date of notice to Defendants for purposes of infringement. (ECF No. 293.)[2] Plaintiff's motion to preclude Scenario 1D was held under advisement, and Trexler was permitted to testify at trial, consistent with her third report.

At the close of trial, I ordered the parties to submit post-trial briefing only as to "whether Defendants, in their disclosure of the [Third Trexler Report] and its supporting documents on January 15, 2020, failed to comply with Federal Rule of Civil Procedure 26, and whether that alleged failure resulted in prejudice to Plaintiff." (ECF No. 283.)

II. **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

---

[2] Under this theory, Defendants were attempting to assert that Plaintiff's disgorged profits should be calculated starting from August 8, 2013, when the lawsuit was filed, and ending with the final dates of sale for the Accused Products. This calculation was based on Defendants' contention that 35 U.S.C. § 289, which permits recovery for disgorged profits, limits that recovery for lack of notice. I concluded that § 289 did not include this notice requirement and that 35 U.S.C. § 287, the marking provision, which does require notice, did not apply to Plaintiff. As such, I excluded any damages scenarios in the Third Trexler Report based on this theory.

3

substantially justified or is harmless." "Rule 37 is written in mandatory terms" because it "is designed to provide a strong inducement for disclosure of Rule 26(a) material." Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995) (internal quotation marks omitted). However, Rule 37 "expressly provides that sanctions should not be imposed if substantial justification exists for the failure to disclose, or if the failure to disclose was harmless. Thus, the rule does not leave district courts without discretion." Id.

Courts have defined "substantial justification" as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance." See, e.g., Sheetz v. Wal-Mart Stores, East, L.P., No. 15-2210, 2017 WL 5625768, at *2 (M.D. Pa. Nov. 22, 2017) (quoting Grider v. Keystone Health Plan Center, Inc., 580 F.3d 119 (3d Cir. 2009)). "A harmless failure involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." Sheetz, 2017 WL 5625768, at *2 (internal quotation marks omitted). "The non-producing party shoulders the burden of proving substantial justification for its conduct or that the failure to produce was harmless." Id.

The United States Court of Appeals for the Third Circuit has set forth a four-part test to determine "whether failure to adhere to pretrial expert disclosure requirements warrants the 'extreme sanction' of exclusion of testimony at trial." Sheetz, 2017 WL 5625768, at *2 (citing Meyers v. Pennypack Woods Home Ownership Assoc., 559 F.2d 894, 904–5 (3d Cir. 1977)). Those factors include:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;
>
> (2) the ability of that party to cure the prejudice;

4

> (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and
>
> (4) the bad faith or willfulness in failing to comply with the district court's order.

Pennypack, 559 F.2d at 904–5; see also In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791 (3d Cir. 1994). In addition to these factors, "an important final consideration" is "[t]he importance of the excluded testimony." Billet Promotions, Inc. v. IMI Cornelius, Inc., No. 95-1376, 1998 WL 721081, at *8 (E.D. Pa. Oct. 14, 1998) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Exclusion of Trexler's Scenario 1D

Plaintiff urges exclusion of Scenario 1D in the Third Trexler Report for its belated production. For infringement of a design patent, Plaintiff may seek to recover total profits, but not less than $250, from whoever "without the license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any *article of manufacture* for the purpose of sale, or (2) sells or exposes for sale any *article of manufacture* to which such design or colorable limitation has been applied." 35 U.S.C. § 289 (emphasis added). Pursuant to Trexler's Scenario 1D, Defendants assert that under this provision the relevant "article of manufacture" is only the handles of the Accused Products. This damages theory, if accepted, would limit Plaintiff's damages to the profits generated from the sale of only the handles of the Accused Products.

Defendants do not dispute that the first mention of this new damages theory was on January 15, 2020, approximately a week before trial, but urge its admissibility, claiming that there is no prejudice. Plaintiff responds that, before the Third Trexler Report, the data produced by Defendants, and their theories presented, were based on profits from the entire introducer sheath. As a result, Plaintiff states that he was deprived of the opportunity to explore Scenario

5

1D during discovery or potentially hire an expert to rebut this theory. And, because this scenario was disclosed just prior to trial, Plaintiff argues that he had no opportunity to cure the prejudice.

Defendants posit that any prejudice from the late production of the Third Trexler Report could have been cured if Plaintiff had simply requested to depose Trexler before trial. Defendants point out that Plaintiff was permitted to depose Q. Todd Dickinson, Defendants' Patent and Trademark Office ("PTO") expert, on January 24, 2020, a few days before trial began. Because Plaintiff did not avail himself of the opportunity to depose Trexler, Defendants contend that he cannot now assert that he was prejudiced by the late production of the Third Trexler Report.

Defendants further argue that the reason Scenario 1D was not disclosed before January 15, 2020 is because this theory of damages was not viable until the decisions in Apple, Inc. v. Samsung Elecs. Co. Ltd., No. 11-1846, 2017 WL 4776443 (N.D. Cal. Oct. 22, 2017), and Luxembourg v. Homes Expressions, Inc., 938 F.3d 1334 (Fed. Cir. Sept. 12, 2019).

After consideration of the parties' positions on this issue and based upon an analysis of the four Pennypack factors, I will exclude Trexler's opinion as to Scenario 1D.

As to the first factor, I conclude that Plaintiff was prejudiced by the late production of this scenario. "Prejudice is inherent when deadlines are disregarded in complex cases with extensive discovery . . . ." Apotex, Inc. v. Cephalon, Inc., No. 06-2768, 2015 WL 12645745, at *2 (E.D. Pa. May 26, 2015). Here, Defendants' eleventh-hour production of the Third Trexler Report, days before trial and long after the close of expert discovery, is a clear example of prejudice. Although it is possible that, even with trial about to start, Trexler could have been deposed on Scenario 1D, Plaintiff could not take any written discovery or request documents

pertinent to this theory. And Plaintiff would have been precluded from hiring his own expert to possibly rebut this new theory on such short notice.

Plaintiff also could not have anticipated that Defendants would present a damages theory based on only the handles of the Accused Products, because, up until January 15, 2020, Defendants had pursued a disgorged profits theory based on the entire introducer sheath. Indeed, the first two iterations of Trexler's expert report do not mention a "handles-only" theory. Defendants' Pretrial Memorandum, filed on November 25, 2019, which disclosed the need to correct the Second Trexler Report, characterized the correction as only impacting the amount of disgorged profits "in a manner that may increase the damage calculation." (Defs.' Pretrial Memo, ECF No. 245, at 10 n. 2.) And, proposed Jury Instruction 11.4, which Defendants' jointly submitted with Plaintiff, defines "total profit" as "the entire profit on the sale of the article to which the patented design is applied, or with which it is used, and not just the portion of profit attributable to the design or ornamental aspects of the patent." (Am. Joint Proposed Jury Instructions, ECF No. 267, at 118.) Tellingly, there is no mention of a "handles-only" theory in the proposed jury instructions. For these reasons, I find that Plaintiff was prejudiced by the late production of Scenario 1D.

Regarding the second Pennypack factor, I find that Plaintiff did not have the ability to cure the prejudice from this late production. Defendants continue to press that Plaintiff could have sought to depose Trexler before trial. They support this contention by pointing out that I allowed the deposition of Q. Todd Dickinson a few days before trial. But comparison of these two witnesses is inappropriate. The addition of Dickinson was a last-minute substitution for Defendants' original PTO expert due to that expert's health issues. Dickinson adopted the entire expert report of his predecessor. Therefore, it was only his qualifications that needed to be

7

explored in a deposition. Trexler, on the other hand, has been an expert in this case since 2014, and Plaintiff would have had to depose her on an entirely new damages theory.

In short, permitting Trexler's last-minute deposition would not have cured the prejudice against Plaintiff. Without more time to take discovery on Scenario 1D or consider consulting an expert of his own, Plaintiff did not have an appropriate opportunity to prepare for the rebuttal of this damages theory at trial. Moreover, Plaintiff was already forced to depose Dickinson at the eleventh hour because Defendants needed a late substitution. To hold Plaintiff to a standard of self-help that would require him to depose two expert witnesses in a complex patent matter a week before trial is unreasonable. As such, the second Pennypack factor weighs in Plaintiff's favor.

The third factor is whether waiver of Rule 37 would disrupt the orderly and efficient trial of the case or of other cases in the court. I permitted Trexler to testify on Scenario 1D at trial and held Plaintiff's motion to exclude this scenario under advisement. As such, I find this factor to be inapplicable.

Finally, regarding the fourth Pennypack factor, the only other justification that Defendants rely on to explain their late disclosure of Scenario 1D is that the Apple and Luxembourg cases, which govern the "article of manufacture" determination, were not decided until 2017 and 2019, respectively. I first note that the "article of manufacture" four-part test in Apple was articulated over two years ago. Luxembourg, assuming its relevance to this case, was decided in September 2019—months before Defendants submitted their Pretrial Memorandum, motions *in limine*, and proposed jury instructions, in which they continued to pursue a theory of disgorged profits based on the entire introducer sheath.[3]

---

[3] The test articulated by the district court in Apple is helpful to my determination of the relevant "article of manufacture" here, but, as set forth above, Defendants' disclosure of a damages theory based

8

Although I choose not to reach the question of bad faith in connection with Defendants' conduct, I find that the late disclosure of Scenario 1D was a willful failure to comply with the Court's scheduling orders and the requirements of Fed. R. Civ. P. 26.[4] In sum, after weighing all of the Pennypack factors, I conclude that Trexler's Scenario 1D and all documents related to this damages theory should be excluded.

### B. Exclusion of Defendants' Exhibit 164

Plaintiff also seeks to exclude Defendants' Exhibit 164 as untimely and prejudicial. This exhibit lists each "kit" sold by Defendants and identifies which of the Accused Products was included in each kit. Plaintiff alleges that this exhibit was first produced on the day that it was introduced at trial, January 31, 2020.

This evidence may be relevant to my calculation of damages. However, that relevance is dependent upon a finding of infringement. In other words, if I conclude that there was no infringement, then this exhibit is irrelevant. And, even if I do find infringement, this exhibit may still prove irrelevant or unnecessary to my calculation of profits on Defendants' kit sales if, for instance, I conclude that all four of the Accused Products infringe the D'839 Patent. As such, I will hold this matter under advisement until a final decision on Defendants' alleged infringement is issued.

---

on that case is untimely. Luxembourg confronts an issue not before me—whether "claim language specifying an article of manufacture can limit the scope of a design patent, even if that article of manufacture is not actually illustrated in the figures." Luxembourg, 938 F.3d at 1339–40. In Luxembourg, the patent merely illustrated the design for a chair pattern, "disembodied from any article of manufacture." Id. at 1336. Here, the D'839 Patent clearly illustrates in the figures an introducer sheath with the claimed handle design. Luxembourg is distinguishable and, therefore, irrelevant to my determination of the article of manufacture in this case.

[4] As to my final consideration—the importance of Trexler's testimony regarding Scenario 1D—Defendants themselves acknowledge that this data is provided simply to aid the Court in assessing damages if liability is found. The ultimate determination of the relevant "article of manufacture" rests with the factfinder. See Apple, 2017 WL 4776443, at *11.

9

### C. Request for Attorney's Fees

Finally, Plaintiff requests that additional sanctions be imposed in the form of attorney's fees "relating to Plaintiff's time in responding to and addressing Defendants' changing damages reports and theories in the case and at trial." (Pl.'s Br., ECF No. 295, at 10.) Under Rule 37, "in addition to or instead of" the sanction of exclusion, I may, "on motion and after giving an opportunity to be heard," order payment of the reasonable expenses, including attorney's fees, caused by the failure to comply with Rule 26. Fed. R. Civ. P. 37(c)(1)(A)–(C).

As discussed above, I find that Defendants have willfully failed to comply with Rule 26's disclosure requirements. Based on this finding, I will grant Plaintiff's request for reasonable attorney's fees and expenses but only as to those expenses incurred in connection with (1) drafting or responding to any motions or briefs related to Scenario 1D; and (2) preparing to address Scenario 1D at trial. Plaintiff may submit documentation in support of his request for fees, and Defendants will have an opportunity to respond.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, I conclude that Scenario 1D in the Third Trexler Report and any documents related to this scenario are excluded. Plaintiff's request to exclude Defendants' Exhibit 164 is held under advisement until a final decision is made on infringement. I also grant Plaintiff's request for attorney's fees as set forth above. The appropriate calculation of fees is to be addressed by the parties in separate briefing.

An appropriate Order follows.